Travis J. HARRINGTON,
Plaintiff–Appellant,

v.

RICE LAKE WEIGHING SYSTEMS, INC., and Rice Lake Bearing, Inc., Defendants–Appellees.

No. 96–2978.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1997.

Decided Aug. 25, 1997.

Jeff S. Olson (argued), Madison, WI, Patrick O. Patterson, Hall, Patterson & Charne, Milwaukee, WI, for Plaintiff–Appellant

Michael D. Schwartz (argued), Schwartz, Wandling & Bergeson, Minneapolis, MN, for Defendants–Appellees.

Before POSNER, Chief Judge, WOOD, JR., and RIPPLE, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Rice Lake Weighing Systems, Inc. fired Travis Harrington ("Harrington") a month after he returned to work from neck surgery. At the time of his discharge, Harrington's physician had lifted all medical restrictions at work and expected a full recovery. Harrington, by all accounts, was able to perform his duties at work after the surgery. He contends, however, that Rice Lake Weighing Systems, Inc. regarded him as disabled and discharged him for that reason. He filed this suit for monetary relief under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101–34. The district court found that Harrington failed to adduce facts sufficient to meet the threshold burden of proving that he was disabled within the meaning of the ADA and granted summary judgment to Rice Lake. We affirm.

## I. BACKGROUND

The defendant, Rice Lake Weighing Systems, Inc. ("Rice Lake"), is a Wisconsin corporation that develops, manufactures, and sells balances.[1] Harrington worked for Rice Lake from May 13, 1991 to December 18, 1992 as a customer service representative and supervisor. Harrington's duties included marketing, installing and servicing scales, developing new applications, and creating a training course. Harrington, a Louisiana native who referred to himself as the "cajun scaleman," also represented Rice Lake at trade shows.

On August 2, 1992, Harrington injured his neck at a trade show while he and another Rice Lake employee assembled a display booth. He felt a sharp pain in his neck, but assumed it was merely a pulled muscle and he did not seek treatment immediately. In late September, he was diagnosed with a cervical disk herniation and Dr. Peter G.

---

**1.** Rice Lake Bearing, Inc. is the inactive, parent corporation of Rice Lake Weighing Systems, Inc. Rice Lake Weighing Systems, Inc. was Harrington's employer; therefore, we will refer to Rice Lake Weighing Systems, Inc. as the only defendant.

Gianaris suggested surgery. On October 13, 1992, Harrington informed Rice Lake of his scheduled surgery in a note which stated, in part, that he "had the utmost confidence in the neuro-surgical staff and will rebound soon. I assure you that the 'cajun scaleman' will adhere to his strict therapy procedures to be back at work in the minimum time." Harrington worked full time, without any medical restrictions on his activity, until October 22, 1992, when he left for surgery.

On October 23, 1992, Harrington underwent anterior cervical microdiskectomy and fusion surgery. After the surgery and through November 10, 1992 plaintiff recuperated and began rehabilitation. On November 11, 1992, he returned to work with a no-lifting restriction. He met all the responsibilities of his position and for the limited lifting which he encountered he received assistance from other employees. On December 3, Harrington visited Dr. Gianaris and received a bright prognosis. Dr. Gianaris noted, "Harrington feels he has made good progress and will continue to make additional progress in the coming weeks" and "at the end of two weeks time [Harrington] will be able to have no additional restrictions." The Return to Work Permit Harrington brought to Rice Lake after his visit with Dr. Gianaris imposed "No lifting over 30 pounds for two weeks, and then no restrictions." All signs indicated a full recovery.

On December 10, 1992, Harrington slipped on some stairs at Rice Lake and, subsequently, felt a burning sensation in his neck. On December 14, he scheduled an appointment with Dr. Gianaris for December 16 to check for problems which the slip may have caused. Harrington filled out an accident report and wrote a note to Richard Caulkins, his supervisor, which stated, "Rick, I have to go to the doctor's Wednesday, Eau Claire, at 10:00. Am having problems, Travis."

Dr. Gianaris and Harrington agreed at the December 16 visit that, in spite of the slip on the stairs, his cervical range of motion was improving nicely and the strength in his right arm was returning as scheduled. This visit reaffirmed that plaintiff was healing as planned. Dr. Gianaris placed no further restrictions on his return to work.

On December 18, 1992, Harrington received a notice of dismissal stating, "Due to your continued absences at Rice Lake Weighing Systems without properly signing out even after notification by your immediate supervisor and Mary Beth Robach [Human Resources Department], your services at Rice Lake Weighing Systems are no longer required. This is effective immediately." Harrington then moved back to Louisiana where in March 1993 doctors detected a collapse of the fused-bone structure created by the first surgery. After a second surgery, Harrington's doctors determined that he needed to find employment that was less physically taxing, and which would not require lifting or climbing stairs.

After his dismissal from Rice Lake, Harrington brought proceedings with the Wisconsin Worker's Compensation Division, claiming that Rice Lake violated Wis. Stat. § 102.35(3), which dictates that an employer must rehire an employee injured at work. An administrative law judge ruled in Harrington's favor on November 1, 1994. Harrington was also successful on appeal. He then brought suit in district court claiming that he was disabled as defined by the ADA and that Rice Lake discriminated against him for that reason. Because the district court found that Harrington failed to adduce sufficient facts to create a genuine issue of material fact as to whether he was "disabled" under the ADA, it granted summary judgment to Rice Lake. Harrington appeals.

## II. DISCUSSION

■ We review the district court's grant of summary judgment *de novo*. *See Libertarian Party of Ill. v. Rednour*, 108 F.3d 768, 772 (7th Cir.1997); *National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir.1996). The court should grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370

(7th Cir.1997). When determining whether a genuine issue of material fact exists, we must view the record in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Harrington argues that he presented sufficient evidence to the district court to raise a genuine issue of material fact as to whether he was disabled within the meaning of the ADA. He also argues that the findings of the Wisconsin Worker's Compensation Division, specifically its finding that Rice Lake fired him because of his injuries and offered pretextual reasons for the discharge, should have preclusive effect on this ADA action. He seeks a reversal of the grant of summary judgment to Rice Lake and a remand for a trial on the issues not concluded by the Wisconsin Worker's Compensation case.

Title I of the ADA prohibits employers from discriminating against a qualified individual with a disability because of the disability. *See* 42 U.S.C. § 12112(a). To survive a summary judgment motion, Harrington must first establish that he is a qualified individual with a disability under the statute. *See* 42 U.S.C. § 12102(2); Fed. R. Civ.P. 56; *Howard v. Navistar Int'l*, 904 F.Supp. 922, 927 (E.D.Wis.1995) (citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995)). The statute defines "disability" in three ways:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual,

(B) a record of such an impairment, or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). An impairment is any physiological disorder, cosmetic disfigurement, or anatomical loss affecting one of the body's systems, or any mental disorder. *See* 29 C.F.R. § 1630.2(h). In determining if an impairment is substantially limiting the court should consider:

(1) the nature and severity of the impairment,

(2) the duration or expected duration of the impairment, and

(3) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment.

29 C.F.R. § 1630.2(j). Major life activities are the basic functions which the average person can perform with, at most, slight difficulty; for example, breathing, hearing, seeing, speaking, walking, working, performing manual tasks and learning. *See* 29 C.F.R. § 1630.2(i). Harrington argues that the district court erred in granting summary judgment because he presented sufficient evidence to reach a jury as to whether Rice Lake perceived him to be disabled.[2] We disagree.

■■■ The "regarded as" portion of the ADA was designed to combat erroneous stereotypes that employers may have about impairments that are not, in themselves, substantially limiting. *See Johnson v. American Chamber of Commerce Publishers, Inc.*, 108 F.3d 818 (7th Cir.1997); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 541 (7th Cir.1995); *see also School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987) ("Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment."). The ADA regulations define three ways in which to satisfy the "regarded as" test:

(1) The individual may have an impairment which is not substantially limiting but is treated by the employer or other covered entity as constituting a substantially limiting impairment;

(2) The individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or

(3) The individual may have no impairment at all but is regarded by the employer or other covered entity as having a substantially limiting impairment.

---

**2.** Harrington does not argue that he was in fact disabled when he worked for Rice Lake, only that Rice Lake regarded him as being disabled or substantially limited in one or more major life activities. *See* 42 U.S.C. § 12102(2)(C).

*See* 29 C.F.R. § 1630.2(*l*). Clearly, the third category is inapplicable because Harrington's neck injury was an impairment. The second category is also inapplicable because there is no indication that Harrington's impairment substantially limited his ability to work after he returned from surgery. Although Harrington's physician put some restrictions on lifting immediately following the surgery, those restrictions were not expected to be permanent or long lasting, and they had been removed before he was discharged. *See Vande Zande*, 44 F.3d at 544 (an intermittent, episodic impairment, like a broken leg, is not a disability). Furthermore, Harrington was a salesperson and personnel manager; lifting was only incidental to his position. An inability to do minor aspects of the job while performing one's duties in general does not amount to a substantial limitation on the activity of working. *See Byrne v. Board of Educ.*, 979 F.2d 560, 567 (7th Cir.1992) ("[A]n employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job.") (quoting *Forrisi v. Bowen*, 794 F.2d 931, 934 (4th Cir.1986)); *accord Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995) (impairment preventing plaintiff from performing narrow range of meat packing jobs not considered substantially limiting).

■ The first category is applicable, however, and Harrington, therefore, must provide evidence that Rice Lake perceived him to be substantially limited in his job. Harrington suggests that several factors indicate that Rice Lake regarded him as disabled. He first points to his request for assistance immediately following surgery, implying that his need for help in lifting heavy objects led Rice Lake to view him as disabled. Harrington had no restrictions on lifting when he was fired, however. Harrington suggests, nevertheless, that Rice Lake knew his recovery was frustrated for two reasons: because he reported to his supervisor that "he felt that he was going to have some permanent problems ..." and because he slipped on the steps at work. The nebulous self-reports to his immediate supervisor do not amount to an inference that management understood "problems" to mean a substantial limitation

at work—a limitation which was not apparent in his performance before the discharge. *Cf. Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir.1996) ("While the defendant may have perceived that Kocsis' health problems were adversely affecting her job performance, there is no evidence that defendant regarded Kocsis as being unable to care for herself or to perform all of the duties of her job."). At the time of his discharge, even after the second slip, all medical reports indicated that the recovery was progressing nicely and Harrington was performing his duties at work. He, eventually, had to undergo a second neck surgery, which may or may not have resulted from his slip on the stairs, but the need for a second surgery was not known until well after his discharge.

■ Next, Harrington suggests that Rice Lake's treatment of him after the surgery was indicative of its belief that he was disabled. When Harrington returned from his leave, he found part of his work station missing. He argues that this indicated Rice Lake did not expect him to remain at work for long. This is speculative, however, and we require more than speculation to prove that Rice Lake considered him disabled. The evidence shows that Harrington had everything he needed to do his job and Rice Lake needed the missing items elsewhere.

■ Finally, Harrington argues that Rice Lake's perception that he was disabled is implicit in the worker's compensation ruling that he was fired because of his injuries. Assuming, *arguendo*, that the ruling by the administrative law judge precludes the findings in this case, a compensable injury under Wisconsin law is not the same as a disability under the ADA. Even if Rice Lake fired Harrington because of his injury, he would not necessarily have a claim under the ADA. "The Act is not a general protection of medically afflicted persons.... [I]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation." *Christian v. St. Anthony Medical Center, Inc.*, 117 F.3d 1051, 1053 (7th Cir.1997).

Absent any indication prior to Harrington's discharge, the discharge alone does not evince that Rice Lake regarded him as disabled. The notion that Rice Lake must have fired Harrington because it regarded him as disabled and that it plainly regarded him as disabled because it fired him is attractive but circular—it lacks a causal antecedent. All facts suggested that Harrington was not substantially limited at work; all medical reports foretold of a full recovery. Rice Lake had no reason to regard Harrington as disabled and gave no indication that it did.

Viewing the record in a light most favorable to Harrington, we find that Harrington did not adduce sufficient facts to meet the threshold burden of proving he was disabled within the ADA's definition at the time of his discharge. We affirm the district court's grant of summary judgment to Rice Lake.

AFFIRMED.