Paul **RIEMER,** Plaintiff–Appellee,

v.

**ILLINOIS DEPARTMENT OF TRANSPORTATION,** Defendant–Appellant.

Nos. 97–1129, 97–1734 and 97–2011.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1998.

Decided June 29, 1998.

James P. Baker (argued), Springfield, IL, for Plaintiffs–Appellees.

Paul Racette (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellants.

Before CUMMINGS, HARLINGTON WOOD, JR. and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

On March 16, 1995, Paul Riemer filed a complaint against his employer, the Illinois Department of Transportation ("IDOT"). He alleged that IDOT had discriminated against him in violation of the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C. §§ 12101–12213. A jury trial was held on July 16–18, 1996. The jury found in favor of Mr. Riemer and awarded him $99,140.00 in compensatory damages. IDOT then filed a motion for judgment as a matter of law or, in the alternative, for a new trial. The district court denied that motion and IDOT filed a timely appeal to this court. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

Paul Riemer began his employment with IDOT in February 1984 as a journeyman iron worker. From that time until February 1993, Mr. Riemer worked in IDOT's fabrication shop in Springfield, Illinois. In that position, he fabricated iron for road construction projects. During the warm weather months, Mr. Riemer worked in the fabrication shop about 70% of the time and worked the rest of the time "in the field" at various outdoor construction projects. In the winter months, Mr. Riemer worked exclusively at the fabrication shop.

In February 1993, Mr. Riemer presented IDOT with a note from his physician, Dr. Glennon Paul, which stated that he would be unable to work for the next thirty days due to a respiratory problem. In that note, Dr. Paul explained that Mr. Riemer suffered from asthma and that his asthmatic condition had been aggravated by fumes in the shop. Mr. Riemer's supervisor granted his request for medical leave.

In 1993, IDOT required an individual returning from medical leave to provide it with a note from the employee's physician authorizing the employee's return to work. In compliance with that requirement, on March 24, 1993, Dr. Paul sent IDOT a letter authorizing Mr. Riemer's return to work. In that letter, Dr. Paul advised IDOT that Mr. Riemer was "medically fit to go back to work" in the fabrication shop and that his asthma was "100% controlled." Plaintiff's Ex. No. 8. IDOT, however, wanted a second opinion and sent Mr. Riemer to Dr. Sudha Prasad for an evaluation. Dr. Prasad recommended that Mr. Riemer be given a permanent field position out of doors because, in her opinion, the conditions at the fabrication shop were triggering his asthma attacks. IDOT accepted Dr. Prasad's recommendation and informed Mr. Riemer that he could no longer work in the fabrication shop but would be assigned to work in the field away from Springfield. After Mr. Riemer's reassignment, Dr. Paul again wrote to IDOT assuring them that it was safe for Mr. Riemer to

resume working in the fabrication shop. Nonetheless, Mr. Riemer's supervisors refused to restore him to his previous position.

As a result of the move to field work, Mr. Riemer's earnings declined considerably because he was paid by the hour and field work offered fewer hours than his previous position. In fact, during the winter months, there was no field work at all. In addition, Mr. Riemer was not able to commute to the field sites on a daily basis because the sites were typically a significant distance from his home. Accordingly, he would stay overnight in a hotel near the job site during the week. Like all field workers, Mr. Riemer was neither paid for his travel time nor reimbursed for his traveling and lodging expenses. Moreover, due to the location of the job sites, Mr. Riemer was unable to spend time with his family during the week. These frequent absences from home caused stress in his relationship with his wife.

### B.

On March 26, 1995, Mr. Riemer brought this action against IDOT. In his complaint, Mr. Riemer alleged that IDOT had violated the ADA when it reassigned him from the position at the fabrication shop to a less desirable position in the field upon his return from medical leave. A bifurcated jury trial was held on July 16–18, 1996. The jury found in favor of Mr. Riemer in the liability phase of the trial and, at the close of the damages phase, awarded him $99,140.00 in compensatory damages. IDOT then filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a). That motion was denied by the dis-

trict court and IDOT filed a timely appeal to this court.

### II

### DISCUSSION

IDOT contends that the district court erred in denying its post-trial motion for three reasons. First, IDOT asserts that it is entitled to judgment as a matter of law or to a new trial because the district court should not have instructed the jury that it could find Mr. Riemer to be "disabled" within the meaning of the ADA if it concluded that IDOT "regarded" Mr. Riemer as having "a physical impairment that substantially limits [him] in one or more ... major life activities." R.21, Defendant's Instruction No. 4A.[1] IDOT acknowledges that the instruction is an accurate statement of the law, see 42 U.S.C. § 12102, but contends that the issue of whether IDOT perceived Mr. Riemer as suffering from a disability was never properly before the court because it was not raised by Mr. Riemer in either his complaint or the pretrial order.[2] Second, IDOT asserts that the district court erred in denying its motion for judgment as a matter of law or a new trial because, even if the issue of IDOT's perception of Mr. Riemer's condition was properly before the jury, there was no evidence that IDOT perceived Mr. Riemer as suffering from a disability within the meaning of the ADA. Finally, IDOT maintains that the district court erred in denying its motion for a new trial on the issue of damages.

### A.

■ In turning to the merits of IDOT's initial contention, we review briefly the

---

1. In the district court, IDOT at first contended that the court should not instruct the jury as to the perception prong of the ADA's disability definition. However, it later offered its own instruction containing the perception prong as an alternative to the plaintiff's proffered instruction on that issue. The district court ultimately decided to instruct the jury on the perception prong and used IDOT's alternative instruction rather than Mr. Riemer's proffered instruction.

2. IDOT maintains that the only issue properly before the court was whether Mr. Riemer suf-

fered from an *actual* disability. Therefore, in IDOT's view, it was entitled to judgment as a matter of law when Mr. Riemer's counsel conceded in closing argument that his client did not suffer from an actual physical disability. See R.51 at 237–38. In the alternative, IDOT contends that it should be granted a new trial due to the prejudice it suffered as a result of the district court's erroneous decision to allow Mr. Riemer to shift the entire focus of his case at the last minute.

ADA's definition of disability. Under the ADA, an individual can establish that he is disabled by showing one of three things: (1) that he suffers from a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). In this case, the jury was instructed as to the first and third prongs of the ADA's definition: "The term 'disability' means, with respect to an individual, a physical impairment that substantially limits one or more of the major life activities of such individual, or that an individual is regarded as having such an impairment." R.21, Defendant's Instruction No. 4A.

IDOT asserts that the jury should not have been instructed as to the perception prong of the ADA's disability definition because that theory was not raised by Mr. Riemer in his complaint. IDOT argues that Mr. Riemer's complaint can only be read as alleging that he suffers from an *actual* (as opposed to a *perceived*) physical disability, or, in the ADA's terms, that his asthmatic condition is a physical impairment that substantially limits one or more of his major life activities. However, the district court, in its order denying IDOT's posttrial motion, held that Mr. Riemer's complaint gave IDOT sufficient notice of the grounds on which his claim rested, including the theory that IDOT perceived Mr. Riemer as suffering from an impairment which substantially limits one or more of his major life activities. Accordingly, the court held that "the jury instruction regarding liability based upon defendant's perception of plaintiff's disability was proper." R.35 at 8.

▇▇▇ We review the district court's decisions concerning jury instructions for an abuse of discretion. *See American Nat'l*

*Bank & Trust Co. v. Regional Transp. Auth.,* 125 F.3d 420, 434 (7th Cir.1997). As an initial matter, we note that it is undisputed that the instruction IDOT challenges is an accurate statement of the law. Instead, IDOT argues that Mr. Riemer's complaint did not provide it with sufficient notice that his theory of the case involved a claim that IDOT perceived him as suffering from a disability within the meaning of the ADA. In evaluating this argument, we turn to the well-established rules governing the interpretation of complaints in federal court. Under the Federal Rules of Civil Procedure, complaints are to be construed liberally. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Accordingly, a plaintiff is not required to plead facts or evidence to support his claims; nor is he required to set forth explicitly his theory of the case. *See Homeyer v. Stanley Tulchin Assocs.,* 91 F.3d 959, 961 (7th Cir.1996). Given the generous reading mandated by the Civil Rules, it is clear that Mr. Riemer's complaint was sufficient to give IDOT notice that Mr. Riemer's theory of the case included a claim based on the perception prong of the ADA's disability definition. Indeed, in paragraphs 5, 7 and 9 of his complaint, Mr. Riemer incorporates the ADA's definition of disability, which includes the theory he ultimately relied on at trial, i.e., that IDOT perceived him as suffering from a disability within the meaning of the ADA.[3] *See* R.1 at 3–4.

▇▇▇ In the alternative, IDOT contends that the jury should not have been instructed as to the perception prong of the ADA's disability definition because that issue was not raised in the pretrial order filed by the parties pursuant to Federal Rule of Civil Procedure 16.[4] *See generally Gorlikowski v.*

---

3. For example, in paragraph 5 of his complaint, Mr. Riemer alleges:

5. That in July of 1991 the Plaintiff, PAUL RIEMER, was diagnosed to suffer from asthma and at all times relevant to the above captioned proceeding subsequent to that time has been treated for his asthmatic condition. *This condition constitutes a disability as that term is defined in 42 U.S.C. § 12102(2).*
R.1 at 3 (emphasis added).

4. We note that IDOT raises this argument for the first time on appeal. This argument was not raised in IDOT's post-trial submissions nor was it raised in oral argument before the district court. Ordinarily, arguments not made in the district court are waived on appeal. However, in this case, Mr. Riemer has not argued that IDOT has waived this issue, but instead has met IDOT's argument on its merits. Accordingly, Mr. Riemer has waived the waiver argument, and we shall address IDOT's argument concerning the pretrial

*Tolbert,* 52 F.3d 1439, 1444 (7th Cir.1995) ("Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, a claim or theory not raised in the pre-trial order should not be considered by the fact-finder."). We cannot accept IDOT's contention. Rather, we believe that the pretrial order, taken as a whole, was sufficient to notify IDOT that Mr. Riemer intended to pursue the theory that IDOT regarded him as being disabled within the meaning of the ADA. In particular, we note that the plaintiff's proposed jury instructions were attached as exhibits to the pretrial order. *See* R.6 at 4. Plaintiff's Proposed Instruction No. 13, defined "disability" as follows:

> The term "disability" as used in these instructions, with respect to an individual, means either: (a) an actual physical impairment that substantially limits one of the major activities of life such as walking, seeing, hearing, speaking or breathing; or (b) the perception by an employer that an individual suffers from such an impairment.

*Id.* at Ex.E, Plaintiff's Instruction No. 13. The fact that Mr. Riemer proffered an instruction defining "disability" as an actual or perceived disability should have been enough to notify IDOT that Mr. Riemer intended to pursue the perception theory at trial.[5]

Because the perception theory was raised adequately in both Mr. Riemer's complaint and the pretrial order, we conclude that the district court did not abuse its discretion by instructing the jury that it could find the

plaintiff to be disabled based on IDOT's perception of him. Accordingly, to the extent IDOT's post-trial motion was based on the argument that the jury should not have been instructed on the perception theory, the district court properly denied that motion.

### B.

■ In the alternative, IDOT contends that the district court erred in denying its motion for judgment as a matter of law or for a new trial because Mr. Riemer presented no evidence that IDOT perceived him as suffering from a disability as that term is defined in the ADA. Before addressing this contention, we note the heavy burden IDOT must meet to succeed in its argument. Our review of a post-trial motion for judgment as a matter of law is de novo, but we view the evidence in the light most favorable to the nonmoving party, Mr. Riemer, and draw all reasonable inferences in his favor. *See Mangren Research & Dev. Corp. v. National Chem. Co.,* 87 F.3d 937, 941 (7th Cir.1996). In applying this standard, we evaluate whether the jury reasonably could have arrived at the conclusion it did. If we answer this question in the affirmative, then we shall not overturn the district court's decision to deny judgment as a matter of law. *See American Nat'l Bank & Trust Co. v. Regional Transp. Auth.,* 125 F.3d 420, 431 (7th Cir.1997).

■ A different standard governs our review of the district court's decision to deny

order on its merits. *See Momient–El v. DeTella,* 118 F.3d 535, 540 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 448, 139 L.Ed.2d 384 (1997); *see also Garlington v. O'Leary,* 879 F.2d 277, 282–83 (7th Cir.1989) ("We have recognized that a defense of waiver can itself be waived by not being raised.").

5. It is significant that Mr. Riemer's proposed instruction did not simply reproduce all three of the ADA's definitions of disability. Instead, he specifically included the first and third definitions (actual and perceived disability) but omitted the second (record of disability). Proposed Instruction No. 13, therefore, indicates a conscious decision by Mr. Riemer to pursue, or to leave open the option of pursuing, the theory that IDOT regarded him as disabled. Such a conscious choice should have caught IDOT's attention.

Moreover, we note that IDOT's contention that it was surprised by Mr. Riemer's reliance on the perception theory is belied further by the fact that, seven days after the pretrial order and a month prior to trial, IDOT objected to Plaintiff's Proposed Instruction No. 13 by filing its own proposed instruction on the definition of disability. *See* R.9 at 7. The instruction proposed by IDOT at that point did not include the perception prong of the ADA's disability definition. This proposed instruction suggests that IDOT was aware, well before trial, that there was some dispute about whether it was appropriate, in light of the facts of this particular case, to instruct the jury on the perception theory of disability. Such a dispute certainly should have been enough to notify IDOT that Mr. Riemer intended to rely (or at least leave open the option of relying) on the perception theory at trial.

IDOT's motion for a new trial. A motion for a new trial based on the sufficiency of the evidence should be granted only if the verdict is against the manifest weight of the evidence. *See Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989). Our review of a district court's application of this test is deferential. *See American Nat'l Bank & Trust Co.*, 125 F.3d at 431. We shall reverse a district court's denial of a motion for a new trial only upon a showing that the court abused its discretion. *See id.* Finally, "[w]e 'are particularly careful in employment discrimination cases to avoid supplanting our view of the credibility of the evidence for that of both the jury (in its verdict) and the judge (in not interfering with the verdict).'" *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1042 (7th Cir.1994) (quoting *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1054 (7th Cir.1990)).

▆▆ As we noted above, an individual can show that he is disabled under the ADA by showing one of three things: (1) that he suffers from a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). At the close of the trial, Mr. Riemer's counsel announced to the jury that Mr. Riemer was relying solely on the ADA's third definition, *i.e.*, that IDOT perceived him as substantially limited in the major life activity of breathing. *See* R.51 at 238. The EEOC's implementation guidelines [6] provide that an individual may satisfy the "regarded as" test by showing that he suffers from "a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as such [a] limitation." 29 C.F.R. § 1630.2(*l*)(1). An employer regards an employee's condition as "substantially limiting" if it perceives the employee to be "significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* at § 1630.2(j)(1)(ii). Here, it is undisputed that IDOT perceived Mr. Riemer's asthmatic condition as a limitation on his major life activity of breathing.[7] This case, therefore, turns on whether the evidence presented at trial was sufficient to support the jury's conclusion that IDOT perceived Mr. Riemer's condition as a *substantial* limitation on his ability to breathe.

It is undisputed that IDOT reassigned Mr. Riemer from his position in the fabrication shop to a less favorable position in the field due to his asthmatic condition.[8] Indeed, Mr.

---

6. As an "administrative interpretation of the Act by the enforcing agency, [the EEOC's implementation guidelines], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotations and citations omitted). In fact, this court has relied previously on the EEOC's guidelines concerning the ADA's "regarded as" definition. *See Baulos v. Roadway Exp., Inc.*, 139 F.3d 1147, 1153–54 (7th Cir. 1998); *Harrington v. Rice Lake Weighing Sys., Inc.*, 122 F.3d 456, 459–60 (7th Cir.1997).

7. The EEOC guidelines define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, *breathing*, learning, and working." 29 C.F.R. § 1630.2(i) (emphasis added).

8. In its argument to this court, IDOT contends that the fact that it reassigned Mr. Riemer is not sufficient on its own to support the jury's conclusion that it regarded Mr. Riemer as disabled within the meaning of the ADA. We do not disagree. In fact, we specifically rejected that argument in a recent case in which an employee asserted that his employer must have regarded him as disabled because the employer fired him after he returned from a period of disability leave. *See Harrington v. Rice Lake Weighing Sys., Inc.*, 122 F.3d 456, 460–61 (7th Cir.1997) ("The notion that Rice Lake must have fired Harrington because it regarded him as disabled and that it plainly regarded him as disabled because it fired him is attractive but circular—it lacks a causal antecedent."). This case, however, presents facts different from those we encountered in *Harrington*. In *Harrington*, there was no evidence that the plaintiff was substantially limited at work or that his employer viewed him as having such a limitation and all the medical reports predicted a full recovery. *See* 122 F.3d at 461. By contrast, in this case, IDOT specifically rejected the assurances of Mr. Riemer's physician and chose to rely instead on the opinion of another physician who recommended that Mr. Riemer be reassigned due to his asthmatic condition. In addition, the record in this case

Riemer had worked in the fabrication shop for nearly nine years and was not reassigned to a full-time field position until IDOT became aware of his asthmatic condition. At trial, Harry W. Favri, one of Mr. Riemer's supervisors, testified that, in March 1993, he made the decision to reassign Mr. Riemer to a field position after he returned to work from a medical leave of absence due to his asthmatic condition. Favri testified that he made that decision based on the advice of Dr. Sudha Prasad, a physician who had examined Mr. Riemer on behalf of IDOT. Dr. Prasad recommended that Mr. Riemer be given a permanent field position out of doors because she believed that the conditions in the fabrication shop were triggering his asthma attacks. Dr. Prasad also recommended that Mr. Riemer might want to consider a different line of employment altogether if he continued to have problems with his breathing in the field position. Based on Dr. Prasad's recommendation, Favri testified that it was his understanding that individuals with asthma experienced difficulty breathing and that the fumes and dust in the fabrication shop could aggravate those difficulties. Accordingly, in his view, it would have been inconsistent with Mr. Riemer's health for him to return to work in the fabrication shop. In addition to his concern about Mr. Riemer's health, Favri testified that his decision to reassign Mr. Riemer was also motivated by his desire to protect IDOT by avoiding the possibility of creating a workers' compensation case.

We conclude that this evidence was sufficient to support the jury's determination that IDOT perceived Mr. Riemer to be substantially limited in the major life activity of breathing. Indeed, the EEOC's implementation guidelines concerning the perception prong of the ADA's disability definition contemplate a similar type of situation. Specifically, the guidelines provide the following example:

> [S]uppose an employee has controlled high blood pressure that is not substantially limiting. If an employer reassigns the individual to less strenuous work because of

unsubstantiated fears that the individual will suffer a heart attack if he or she continues to perform strenuous work, the employer would be regarding the individual as disabled.

29 C.F.R. Pt. 1630, App. at 353. This example is substantially similar to the facts of this case. In this case, Mr. Riemer's treating physician twice wrote to Favri and assured him that it was safe for Mr. Riemer to return to work in the fabrication shop and that Mr. Riemer's asthma was "100% controlled." Despite these assurances, Favri relied on the opinion of a second physician, chosen by IDOT, who opined that Mr. Riemer should not return to work in the fabrication shop. Accordingly, Favri reassigned Mr. Riemer to the "less strenuous" field position based on his fears that Mr. Riemer's continued presence in the fabrication shop would not only jeopardize his health but would also expose IDOT to the possibility of a workers' compensation case.

IDOT asserts that the only reasonable interpretation of the evidence is that IDOT viewed Mr. Riemer's asthmatic condition as a minor limitation on his ability to breathe. It contends that it formed its opinion of Mr. Riemer's condition solely on the basis of the opinions of Drs. Paul and Prasad and that both doctors regarded Mr. Riemer's condition as a mild case of asthma. In IDOT's view, the evidence shows that it did not regard Mr. Riemer's condition as a "substantial limitation" or a "significant restriction" on his ability to breathe, but rather viewed it as a minor medical condition that foreclosed Mr. Riemer from working at one particular job at one particular location. IDOT's interpretation may indeed represent one possible view of the evidence in this case; however, as our discussion above illustrates, we believe another reasonable interpretation of the evidence was that IDOT viewed Mr. Riemer as substantially limited in the major life activity of breathing. The jury chose this latter option and we shall not disturb their choice on appeal.

---

contains ample evidence concerning IDOT's view of Mr. Riemer's condition from which a reasonable jury could conclude that IDOT regarded Mr. Riemer as disabled within the meaning of the ADA.

Viewing the evidence in the light most favorable to Mr. Riemer, a reasonable juror could conclude that Mr. Riemer was disabled within the meaning of the ADA due to IDOT's perception of his condition. Accordingly, the district court properly denied IDOT's motion for judgment as a matter of law. For the same reasons, we conclude that the jury's verdict in this case was not against the manifest weight of the evidence. Accordingly, the district court did not abuse its discretion in denying IDOT's motion for a new trial on the issue of liability.

### C.

 Finally, we turn to IDOT's contention that it is entitled to a new trial on the issue of damages because the damages awarded by the jury were excessive. As noted earlier, at the end of the damages phase of the trial, the jury awarded Mr. Riemer $99,140.00 in damages. Prior to trial, the parties stipulated that Mr. Riemer's decrease in income and added travel expenses due to his reassignment totaled $53,517.96. Therefore, IDOT contends that the $45,582.04 in nonpecuniary damages awarded by the jury overcompensates Mr. Riemer for his emotional distress and inconvenience. The district court, however, upheld the damage award against this post-trial challenge. We review the district court's refusal to grant a new trial on the grounds of excessive damages for an abuse of discretion. *See U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir.1995).

 We make three inquiries when reviewing a compensatory damages award: "whether the award is 'monstrously excessive'; whether there is no rational connection between the award and the evidence, ... and whether the award is roughly comparable to awards made in similar cases." *Id.* On appeal, IDOT does not challenge the district court's conclusion that the jury's award for nonpecuniary damages is not "monstrously excessive"; nor does it contest the court's conclusion that the award is roughly compa-

rable to the awards made in similar cases. Our review, therefore, is limited to whether there is a rational connection between the award and the evidence presented at trial.

With respect to nonpecuniary damages, the jury was instructed to consider the "[e]motional pain, suffering, inconvenience and mental anguish suffered by the plaintiff." R.24. The evidence at trial showed that Mr. Riemer sustained significant inconvenience by virtue of his reassignment in the field. When Mr. Riemer worked in the fabrication shop, the shop was in close proximity to his home and his daily commute ranged from approximately fifteen minutes to half an hour. By contrast, when he was assigned to the field, he worked significant distances from home, largely in the metropolitan Chicago area. During a typical week, Mr. Riemer would leave his home on Monday morning between 3:00 a.m. and 3:30 a.m. in order to be at work by a 7:30 starting time. He would then spend the week at a hotel near the job site and return home on Friday evening. Thus, Mr. Riemer spent close to eight hours engaging in travel which would not have been required had he remained at the fabrication shop.[9]

Similarly, the evidence presented during the damages phase showed that Mr. Riemer suffered substantial emotional pain and mental anguish as a result of his reassignment. As noted earlier, Mr. Riemer testified that during the time he was working in the field, he was at home only on the weekends. As a result of these long absences, his time with his wife and two young sons was significantly less than the time he was able to spend with his family while working at the fabrication shop. In addition, Mr. Riemer testified that his long absences led to frequent arguments with his wife, who complained that she was in effect a single mother. Mr. Riemer testified further that these problems caused him to be "stressed out" because he felt there was nothing he could do to improve his home life

**9.** Mr. Riemer provided detailed evidence to the jury concerning the time he spent traveling in the years after his reassignment in the form of both live testimony and log books he kept during that time. *See* R.52 at 270–71; Plaintiff's Ex. Nos. 20–23. As we noted earlier, Mr. Riemer was not compensated for his travel time.

other than quitting his job.[10]

In light of the evidence that Mr. Riemer sustained significant inconvenience and suffered substantial emotional anguish as a result of his reassignment, we conclude that there is a rational connection between the nonpecuniary damages awarded to Mr. Riemer and the evidence. Indeed, we have previously upheld similar awards in cases involving violations of the ADA and other employment discrimination laws.[11] Accordingly, the district court did not abuse its discretion in denying IDOT's motion for a new trial on the issue of damages.

## Conclusion

For the reasons discussed in the foregoing opinion, we affirm the judgment of the district court.

AFFIRMED.

10. We have held that a plaintiff's testimony about emotional distress may, in certain instances, of itself support an award for nonpecuniary loss. See *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 580 (7th Cir.1996); *Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227–29 (7th Cir.1995).

11. See, e.g., *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1285–86 (upholding award of $50,000 for emotional damages in case where employee was wrongfully terminated in violation of ADA); *Fleming v. County of Kane,·*898 F.2d 553, 561–62 (7th Cir.1990) (upholding award of $40,000 under 42 U.S.C. § 1983 for emotional distress resulting from wrongful termination); *Webb v. City of Chester*, 813 F.2d 824, 836–37 (7th Cir.1987) (reviewing cases and concluding that damages for claims under 42 U.S.C. § 1983 resulting from illegitimate firings "ranged from a low of $500 to a high of over $50,000"); *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir.1985) (holding that $35,000 was an appropriate award for emotional harm suffered as a result of discriminatory treatment and termination).