Rex SLANE, Plaintiff–Appellee,
Cross–Appellant,

v.

MARIAH BOATS, INCORPORATED,
Defendant–Appellant, Cross–
Appellee.

Nos. 98–1127, 98–1128.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1998.

Decided Jan. 11, 1999.

Rehearing Denied Feb. 9, 1999.

A. Courtney Cox (argued), Hart & Hart, Benton, IL, for Plaintiff–Appellee.

Paul G. Schoen, Mary L. Rouhandeh, Edward E. Renshaw (argued), Feirich, Mager, Green & Ryan, Carbondale, IL, Defendant–Appellant.

Before BAUER, MANION, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Rex Slane, a diabetic, worked in the upholstery department at Mariah Boats, Inc. from 1992 until June 1994, when Mariah fired him for refusing to take a drug test (at least that's what Mariah said). Under Mariah's "Drug— and Alcohol–Free Workplace Policy," which started in January of 1994, an employee who refuses to take a drug test is fired immediately unless he certifies his refusal in writing at the time he is asked to take the test and provides a valid medical reason (we assume promptly) for refusing to be tested. Mariah tested its employees on random and "reasonable suspicion" bases, both designed to surprise employees. Mariah hired a third-party administrator, National Safety Alliance, to test employees and report the results.

On June 8, 1994, two employees reported seeing Slane in the bathroom with white powder under his nose. The company took no immediate action to confirm whether Slane was using drugs or to remove Slane from his job, where he handled knives, scissors, and a powerful stapler. Eight days later, however, the company asked Slane to take a drug test. Slane apparently agreed but then got sick, either from a diabetic attack or from heat exhaustion triggered by hot temperatures—there was evidence that it was over 80 degrees—in the factory that day. Slane was taken to a nearby hospital, where he was admitted. NSA tried to conduct the drug test despite Slane's illness but was unable to do so. The parties presented conflicting evidence as to why NSA was unable to test Slane. Mariah presented evidence that Slane refused to take the test; Slane introduced evidence that he was physically unable to take the test. But in either case, the evidence clearly showed that NSA told Mariah Slane refused to be tested and Mariah then fired Slane. Slane eventually took the test the next day and passed. But by then the company had already fired him.

Slane sued Mariah claiming it fired him to avoid having to give him health benefits in violation of ERISA. Slane also claimed Mariah fired him in retaliation because he exercised his rights under the Illinois Workers' Compensation Act. Slane later filed another complaint claiming Mariah fired him because of his diabetes in violation of the Americans with Disabilities Act. The court consolidated the two complaints.

Before Slane filed his second complaint, Mariah moved for summary judgment on the ERISA count, arguing that it fired Slane for a legitimate reason: refusal to take a drug test. Mariah also moved for dismissal of Slane's IWCA claims, arguing that without the ERISA claim the court lacked jurisdiction to hear the IWCA dispute. The court ruled on the motion after Slane filed the ADA claim and therefore denied the motion with respect to the IWCA claims (because the ADA claim provided a basis for supplemental jurisdiction). But the court granted the motion with respect to the ERISA claim, finding that Mariah had a legitimate, nondiscriminatory reason for firing Slane and Slane failed to offer evidence that Mariah's stated reason was a pretext to cover an alleged discriminatory motive.

Mariah later filed a second motion for summary judgment on the ADA claim. For purposes of this motion, Mariah conceded that Slane stated a prima facie claim of discrimination under the ADA but argued that Slane's inability to show pretext should have entitled Mariah to judgment on the ADA claim, just as it had on the ERISA claim. Mariah asked the court to dismiss the IWCA claims for the same reason. This time, Slane offered additional evidence to support his theory that Mariah's stated reason for firing him was pretext and, because of that evidence, the court denied Mariah's motion in its entirety.

The case was tried to a jury and, after Slane presented his case-in-chief, Mariah moved for judgment as a matter of law, arguing for the first time that Slane failed to make out a prima facie case of discrimination under the ADA. The court agreed and snatched the ADA claim from the jury. After the close of all the evidence, Mariah moved for judgment as a matter of law on the IWCA claims, still pushing its theory that Slane failed to show pretext. The court denied that motion and sent the IWCA claims to the jury, which awarded Slane $100,000 in back pay and compensatory damages and $125,000 in punitive damages.

After the verdict, Mariah again moved for judgment as a matter of law. Alternatively, Mariah moved for a new trial or remittitur, arguing that the evidence did not support the jury's verdict and that the award was excessive, the result of passion and prejudice. The court denied the motion. Slane moved for costs and, in response, so did Mariah. The court found Slane to be the prevailing party and awarded him $5,157.42. Mariah's motion for costs, of course, was denied.

The parties filed cross-appeals, claiming error in virtually every single pre— and post-trial ruling by the district court. Mariah also challenges the jury's verdict and the court's decision to award costs to Slane. Slane's counsel conceded at oral argument that he appealed only to salvage some basis for damages in the event we overturn the jury's damages award on the IWCA claims. Because we are upholding the award, we will not discuss Slane's arguments on appeal except to say that they lack merit. Nor will we discuss point by point each of Mariah's challenges to the proceedings below. Mariah, subscribing to the shotgun theory of appellate practice, argues that all of the court's rulings below should be reversed. Mariah's arguments about how the court handled its first and second summary judgment motions and its original and renewed motions for judgment as a matter of law all sound pretty much the same: the court was wrong to rule in Slane's favor because Slane failed to offer evidence showing Mariah's stated reason for firing Slane was a pretext to disguise its discriminatory motive. As we explain below, Slane did offer such evidence. Indeed, the testimony of Mariah's own employees provid-ed enough for the jury to conclude that Mariah was lying when it said it fired Slane because he refused to take a drug test. Thus Mariah's multipronged attack in this regard must fail. We discuss below Mariah's remaining arguments: (1) that it should be given a new trial because the jury's verdict and award were contrary to the evidence and excessive; and (2) that the court abused its discretion in awarding costs to Slane.

■ The district court denied Mariah's motion for new trial and Mariah appeals, raising the same arguments on appeal as it did below—namely, that the verdict was not supported by the evidence, that the award was excessive and that it reflects passion and prejudice on the part of the jury. Our review of the district court's denial of Mariah's motion is deferential; we will reverse only under exceptional circumstances showing a clear abuse of discretion. *Riemer v. Illinois Dep't of Transp.*, 148 F.3d 800, 806 (7th Cir.1998); *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989).

■ The court may award a new trial if the verdict is not rationally connected to the evidence, if it is born out of passion and prejudice, or if it is monstrously excessive. *American Nat'l Bank & Trust Co. of Chicago v. Regional Transp. Auth.*, 125 F.3d 420, 437 (7th Cir.1997). The district court applied this standard and concluded that the verdict and award were consistent with the evidence. We agree. The jury heard evidence that it was hotter than 80 degrees in the factory on the day Slane was asked to submit to the drug test; that Slane suffered heat-related symptoms on the job; that Guy Coons (Mariah's human resources director and the author and administrator of Mariah's Drug— and Alcohol–Free Workplace Policy) knew Slane was suffering heat-related symptoms; that Coons knew any increase in health benefits claims would cause the company's insurance premiums to go up; that Coons fired Slane the very day he was admitted to the hospital; that the company had enforced its drug policy inconsistently; and that Coons deliberately refrained from investigating whether Slane had actually refused to take the drug test. All of this evidence supports the jury's verdict.

■ The fact that Mariah presented evidence that is inconsistent with the jury's verdict does not mean the verdict should be reversed. In denying Mariah's new trial motion the district court noted that this was a close case with sufficient evidence on both sides to support a verdict for either party. No doubt that is frustrating for Mariah. But the district court had to defer to the jury's verdict and so must we. *See Riemer*, 148 F.3d at 806 (we are "particularly careful in discrimination cases to avoid supplanting our view of the credibility of the evidence for that of both the jury (in its verdict) and the judge (in not interfering with the verdict")).

■ Similarly, the damages award was consistent with the evidence. The jury awarded Slane $50,000 in back pay and benefits, $50,000 in compensatory damages, and $125,000 in punitive damages. The damages award reflected rational consideration of the evidence, and we will not second guess the jury's decision. The evidence also supported the jury's punitive damages award. The evidence, viewed favorably in support of the verdict, showed that Mariah's conduct was heartless—it fired an employee while he was lying in the hospital and refused to reconsider that decision even after a doctor explained that Slane was physically unable to take the requested drug test. Coons admitted that he failed to investigate Slane's refusal to take the drug test and that he fired Slane even before NSA confirmed Slane's refusal. Coons and Jimmy Fulks, Mariah's president, testified that they didn't test Slane immediately after learning he was using drugs in the company's bathroom because they wanted to "give Slane the benefit of the doubt." Yet they refused to give any consideration to his doctor's statement explaining that he was unable to take the drug test, and they refused to reconsider their firing decision even after Slane explained the situation. As it did in the district court, Mariah points to the evidence it presented to contradict Slane's evidence. But the jury heard all of that evidence and apparently decided to give greater weight to Slane's view of the case. It was up to the jury to decide what view of the evidence was more palatable.

The finding that the verdict was supported by the evidence also disposes of Mariah's passion and prejudice claim. *See Dresser* *Indus. Inc. v. Gradall Co.*, 965 F.2d 1442, 1449 (7th Cir.1992) ("a finding that damages were not monstrously excessive or unsupported by the evidence necessarily precludes a finding of passion and prejudice").

■ Finally, the district court did not abuse its discretion in awarding costs to Slane. Under Federal Rule of Civil Procedure 54(d)(1) "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Mariah argues that the court erred in awarding costs to Slane because Slane did not "prevail" in the suit; rather, Slane won two claims and Mariah won two. The district court correctly noted that when one party gets substantial relief it "prevails" even if it doesn't win on every claim. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1014 (7th Cir.1985). Slane got $225,000 from the jury. By any definition, he won the battle. The court's conclusion that Slane prevailed was more than reasonable.

For these reasons, we affirm the judgment of the district court.