**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 3, 2010[*]
Decided March 1, 2010

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-2638

| | |
|---|---|
| ALEX WOODS, MARY L. WOODS and JENNIE M. WOODS, | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *Plaintiffs-Appellants,* | |
| *v.* | No. 3:06-cv-50148 |
| CITY OF ROCKFORD, ILLINOIS, | Frederick J. Kapala, *Judge*. |
| *Defendant-Appellee.* | |

**O R D E R**

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

In November 2006, Alex, Mary and Jennie Woods filed a lawsuit under 42 U.S.C. § 1983 claiming that the City of Rockford, Illinois, had deprived them of due process by declining to renew, without a predeprivation hearing, the liquor license for their nightclub. They also claimed that the City had denied them equal protection by imposing racially motivated restrictions that hampered their use of the license before it was lost. The district court dismissed the case at summary judgment after accepting the City's contention that both claims were barred by the applicable statute of limitations. We affirm.

The evidence at summary judgment, viewed in the light most favorable to the plaintiffs, *see Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009), establishes the following. From 1995 to 2004, the plaintiffs operated Lamont's Restaurant and Lounge, a Rockford nightclub that catered primarily to African Americans. Lamont's was incorporated but did not have its own liquor license. Instead, Mary and Jennie Woods had acquired a liquor license in their own names and sold liquor at Lamont's under the authority of that license. Until 2004, those two plaintiffs, themselves African American, were permitted to renew their license despite ongoing disputes with the City concerning the operation of Lamont's. By the time they lost their liquor license for good, the two license holders had received citations due to the presence of minors on the premises, the sale of alcohol to minors and violence at the establishment. The license had also been suspended for 14 days in 2003 for the sale of alcohol to a minor. On at least one occasion, Mary and Jennie Woods had consented to restrictions imposed by the City on Lamont's operations, apparently as a condition to permit the continued use of the liquor license.

On April 28, 2004, Jennifer Cacciapaglia, an assistant city attorney, wrote Mary and Jennie Woods and informed them that their liquor license would expire at 11:59 p.m. on Friday, April 30, 2004, and would not be renewed. The recipients, who already had applied for renewal and paid the renewal fee, were ordered to cease selling liquor at Lamont's at the stated time. They were also told that they could contest the decision and request a hearing by notifying the City in writing within 10 days. The City asserts that its action was taken in response to a history of violence at Lamont's, as evidenced by more than 90 calls to police during a relatively short period, culminating in a shooting in April 2004.

Police showed up to enforce the nonrenewal, and Lamont's did not operate again after April 30. The evidence in the record is sparse concerning the subsequent communications between the plaintiffs and the City, but the parties continued to contemplate a "liquor hearing" for several months. On August 25, 2004, Ms. Cacciapaglia wrote counsel for the plaintiffs advising them that a hearing had been scheduled for December 9, 2004. In August 2004, the City also offered to revive the license on the condition that the plaintiffs sell Lamont's. The plaintiffs did not appear at the December

hearing, nor did counsel appear on their behalf. On December 14, 2004, Ms. Cacciapaglia wrote Mary and Jennie Woods advising that she perceived no further need for a hearing.

What happened between the parties after December 14 is not disclosed by the record. Decisions of a local liquor commissioner (in Rockford the mayor serves in that capacity) may be appealed to the Illinois Liquor Control Commission, but Mary and Jennie Woods did not appeal to the Commission. Instead, in November 2005, the corporation filed a lawsuit raising the same claims asserted by the plaintiffs in this litigation. *Lamont's Rest. & Lounge, Inc. v. City of Rockford*, No. 05-CV-50225 (N.D. Ill. Aug. 30, 2006). None of the plaintiffs joined that suit individually. The suit was filed by counsel on behalf of the corporation, but counsel withdrew early in the litigation, and despite multiple continuances to permit the corporation to find a replacement, no other attorney made an appearance. The district court, after denying a motion from these plaintiffs to join the corporation's suit as co-plaintiffs, dismissed the corporation's lawsuit on August 30, 2006, for want of prosecution.

Meanwhile, on August 7, 2006, the plaintiffs had taken the initial steps to commence this lawsuit. They tendered a complaint naming themselves as plaintiffs, filed an application to proceed in forma pauperis and moved for appointment of counsel. The district court denied their request for pauper status on the same day that the corporation's suit was dismissed. The plaintiffs then waited two months before paying the filing fee and thus their complaint was not filed until November 7, 2006. The corporation is not a party to the second lawsuit, but the plaintiffs' complaint is nearly identical to the corporation's.

After discovery, the plaintiffs moved for summary judgment. The City filed a cross-motion for summary judgment. In its motion, the City argued in part that the plaintiffs' claims were barred by the two-year statute of limitations that governs § 1983 suits in Illinois. *See* 725 ILCS 5/13-202; *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). According to the City, the injuries alleged by the plaintiffs occurred, at the latest, on May 1, 2004, the day that Lamont's was first prohibited from selling liquor. The district court agreed and granted summary judgment for the City.

As an initial matter, the City has argued, both in the district court and on appeal, that Alex Woods lacks standing in this matter. The City correctly notes, in order to have standing, Mr. Woods must have a cognizable injury that is causally connected to the alleged conduct—here a constitutional violation—and is amenable to redress. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Sierra Club v. Franklin County Power of Ill., L.L.C.*, 546 F.3d 918, 925 (7th Cir. 2008). Mr. Woods meets this threshold only with respect to the equal protection claim. He has an ownership interest in the corporation and apparently managed Lamont's, but the liquor license was issued not to Mr. Woods or to the corporation; rather, it

was issued to Mr. Woods's wife and mother, Mary and Jennie Woods, as individuals. Mr. Woods asserts that he personally applied for the renewals, but this representation is not supported in the record and, in any event, does not alter the fact that the license was not in his name. Mr. Woods cannot seek relief for the alleged due process violation on behalf of his wife or mother. *See Barber v. Overton*, 496 F.3d 449, 457-58 (6th Cir. 2007); *Siebert v. Severino*, 256 F.3d 648, 659 n.8 (7th Cir. 2001). On the other hand, the plaintiffs' equal protection claim is not moored only to the license but to the City's alleged pattern of conduct toward Lamont's, in which Mr. Woods played an important role. Therefore, Mr. Woods has standing to press that claim.

On the merits, the plaintiffs principally argue that their claims were timely because they did not accrue until December 14, 2004, when Ms. Cacciapaglia notified them that a hearing would not be conducted. The City responds that the plaintiffs' claims accrued when the liquor license was not renewed at the end of April 2004, a date more than two years before they filed this suit.

As a threshold matter, the plaintiffs arguably waived their theory about the date of accrual because they did not raise the argument at summary judgment. *See Domka v. Portage County, Wis.*, 523 F.3d 776, 783 (7th Cir. 2008); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008). In the district court, the plaintiffs relied on their theory that the corporation's November 2005 lawsuit was, in their view, dismissed only temporarily and was enough to bridge the gap between the date of accrual asserted by the City and their November 2006 lawsuit. Although they did not cite it, the plaintiffs apparently relied on the Illinois savings statute, *see* 735 ILCS 5/13-217, which permits plaintiffs to refile an action within one year of a voluntary dismissal, which Illinois defines to include dismissals for lack of prosecution. *See S.C. Vaughan Oil Co. v. Caldwell, Troutt, & Alexander*, 693 N.E.2d 338, 342 (Ill. 1998). The district court correctly held that the corporation's lawsuit, to which the plaintiffs were not parties and the dismissal of which the corporation did not appeal, did not toll the statute of limitations for their individual claims.

Nevertheless, we may address the plaintiffs' new accrual theory because the City has not asserted waiver in its brief before us. Indeed, it has briefed the statute-of-limitations argument without mentioning the plaintiffs' argument in favor of a December 2004 accrual. *See Riemer v. Ill. Dep't of Trans.*, 148 F.3d 800, 805 n.4 (7th Cir. 1998).

The district court was correct to find the plaintiffs' claims time-barred. A § 1983 claim accrues when a plaintiff knows or should know that his constitutional rights have been violated. *See Savory*, 469 F.3d 672; *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993). Although the plaintiffs now argue that December 14, 2004—the date the City first announced that it no longer saw a need for the contemplated liquor hearing—was the date

their claims accrued, May 1 bears all the markers of the date of accrual. Under Illinois law, a municipal liquor authority may not revoke or decline to renew a liquor license without giving the licensee three days' written notice and the opportunity to appear and defend. 235 ILCS 5/7-5. We have interpreted this directive to grant a licensee a due process right to a hearing prior to the loss of a liquor license, including a loss by nonrenewal. *See Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865 (7th Cir. 2009); *Kelly*, 4 F.3d at 511; *Reed v. Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983). Accordingly, on May 1, Mary and Jennie Woods knew that the City had failed to renew their license in violation of their right to due process. Moreover, the harm attendant to the nonrenewal began to accrue immediately on May 1 when the City raided Lamont's and shut it down. The discussions between the license holders and the City, after May 1, may be characterized as the City's attempt at post-deprivation process or as an offer to consider reinstating the license. The license was finally revoked on May 1 and the alleged due process violation had been committed.

Similarly, the plaintiffs' equal protection claim concerns events before May 1 that culminate in the nonrenewal of the liquor license. The plaintiffs primarily point to what they contend was the City's "racial profiling" of themselves and their clientele. They focus on several nuisance citations, the City's February 2003 order imposing dress-code limitations on Lamont's, including rules apparently meant to discourage gang presence (including gang colors), and on their liquor license problems to support this claim. All of these actions occurred before the license was lost in May 2004, and these claims therefore accrued, at the latest, when Lamont's closed.

The judgment of the district court is AFFIRMED.