Carolyn A. HAIMAN, Plaintiff,

v.

VILLAGE OF FOX LAKE, Defendant.

No. 98 C 0158.

United States District Court,
N.D. Illinois,
Eastern Division.

July 7, 1999.

Laurie J. Wasserman, Law Offices of Laurie J. Wasserman, Skokie, IL, for plaintiff.

Joshua David Holleb, Michael A. Paull, Allen W. Dub, Klein Dub & Holleb, Ltd., Highland Park, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the Village of Fox Lake's motion for summary judgment. For the following reasons, the court grants in part and denies in part the motion.

### I. BACKGROUND[1]

From August of 1988 until February 1, 1993, plaintiff Carolyn A. Haiman ("Haiman") was a bookkeeper for the Treasurer's Department of defendant the Village

---

1. The following facts are taken from the parties' Local General Rule 12(M) and 12(N) Statements. *See infra* Part II.A (discussing the effect of defendant's failure to reply to Haiman's statement of additional facts which she submitted pursuant to Local General Rule 12(N)(3)(b)).

of Fox Lake ("the Village"). Haiman is suing the Village for violations of the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. §§ 12101–12213, claiming that the Village violated the ADA by denying her a reasonable accommodation and firing her because of her heart condition. This court has subject matter jurisdiction over the case pursuant to 42 U.S.C. §§ 2000e–5(f)(3) and 12117(a).

Since August of 1992, Haiman has suffered from severe coronary artery disease. On August 2, 1992, Haiman began to experience chest pains while at work. Marilyn Hoehne ("Hoehne"), who at all relevant times was Haiman's supervisor and the Village's Treasurer, walked into the office and found Haiman lying across her desk. Hoehne told Haiman to leave work and to go to the doctor. Haiman, who thought the pain was because of her ulcers, told Hoehne that she would go home right after work. Hoehne told Haiman that she did not want "nobody dropping dead in my office and me paying for it."

On August 3, 1992, Haiman suffered a heart attack. On August 11, 1992, Haiman underwent cardiac catheterization and angioplasty of the obstructive lesion in her right coronary artery. Following these procedures, she was treated with Cardizem, Lopressor and aspirin, which are all medications used for the treatment of angina and heart disease.

Haiman returned to work for the Village in early September of 1992. After she returned to work, Haiman thought that Hoehne's attitude toward her had changed. Haiman believed that Hoehne was concerned that Haiman would have a heart attack at the office. Hoehne also complained that the Village's health insurance costs were rising due to sick employees and/or their sick family members.

In October of 1992, Haiman developed recurrent chest pain. On November 23, 1992, Haiman was administered a thallium stress test, which she failed. Haiman then underwent an angiogram and angioplasty. She was released from the hospital and told to take the following medications: Lopressor, Ecotrin, Persantine, and Nitroglycerin SL. She was then told to return to the hospital in two weeks for a follow-up thallium stress test and to remain off work pending further evaluation of her medical condition.

Hoehne maintained a log that documented facts related to Haiman's medical condition. The first entry of the log reads as follows:

November 25 1992

On Nov 23 92 Carolyn went into the hospital for a follow up stress test, as a follow up after her heart attack. She phoned me on the same day stating that she had been unable to complete said test, and was now on her way to another hospital for more tests, on an in-patient basis. On Tuesday she had a procedure done to clear the artery in the heart.

(Pl.'s Ex. F.)

On December 17, 1992, Haiman underwent another thallium stress test; however, the test was discontinued because Haiman became symptomatic. On approximately December 17, 1992, Haiman met with Hoehne at the Village Hall. Haiman told Hoehne that Haiman had not passed her stress test and that the doctor had told her not to drive a car. A log entry dated December 18, 1992 reads as follows:

Stress test scheduled for 12/15 was canceled due to the machine being down, rescheduled for 12/17/92. On December 17, after said test, Carolyn came into the office with a note from her doctor stating that she was physically not fit to return to work for an undetermined time. There is nothing to indicate what steps will be taken in her treatment. He did say that if there were any questions feel free to call him. At that time she told me that she was not to be out of the house by herself and she was not to drive an automobile. She could have a heart attack at any time.

I told her then that I was going to submit the Employer's Statement of Disability to I.M.R.F. and I gave her the I.M.R.F. forms that she needed to complete and that the doctor needed to fill out on her behalf.

She asked if she had to use all her sick time, vacation time, and any other days that she had coming before she could apply for benefits and I told her yes. I further told her that the last day I could pay her for was 12/31/92. At that time she will have used up any and all time she had coming to her.

(Pl.'s Ex. F.) An entry dated December 29, 1992 reads:

Carolyn called and said that her doctor was sending her to the Universith [sic] of Chicago for more tests and another angioplasty, or possible open heart surgery.

(*Id.*) Another entry dated January 6, 1993 reads:

Carolyn called and said that she had an angioplasty dome [sic], but she did not know when she would be coming back to work. An other [sic] stress test needed to be done.

(*Id.*)

In early January of 1993, Haiman had another angioplasty. On January 15, 1993, Haiman had a follow-up visit with Dr. Kadakia. Haiman was instructed to continue taking her Cardizem, Lopressor, Persantine and Ecotrin for her heart condition. Sometime during January of 1993, Haiman went to the Village Hall and met with Hoehne and Village Trustee Alberta Meyer. Haiman suggested that she could ask her doctor for a release to work part-time. Hoehne rejected the offer, stating that she wanted Haiman well and working only on a full-time basis because Hoehne did not need any part-time help. After that meeting, Hoehne told her assistant that "it was unfair for everyone else's insurance to go up because of Carolyn being ill." Hoehne also told her assistant that Haiman was not a reliable employee because Haiman was sick all of the time.

On February 1, 1993, while Haiman was still on medical leave, the Village fired Haiman. On February 3, 1993, Haiman's doctor released her to return to work. Since October of 1993, Haiman has been continuously employed by and performing bookkeeping duties for ELBT Construction.

## II. *DISCUSSION*

### A. *Local General Rule 12*

Before addressing the merits of the Village's motion for summary judgment, the court must address the Village's failure to reply to Haiman's statement of additional facts which she submitted pursuant to Local General Rule 12 ("Rule 12"). Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Gen.R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N)(3) then requires the opposing party to file, among other items,

a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied upon, and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

Local Gen.R. 12(N)(3).

If the opposing party files a statement of additional facts as provided for in Rule

12(N)(3)(b), Rule 12(M) provides that "the moving party may submit a concise reply in the form prescribed in section N for a response." LOCAL GEN.R. 12(M). Rule 12(M) then states: "All material facts set forth in the statement filed pursuant to section N(3)(b) will be deemed admitted unless controverted by the statement of the moving party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.,* 122 F.3d 374, 382 (7th Cir.1997).

■ In this case, the Village filed a proper Rule 12(M) Statement. In response, Haiman submitted a Rule 12(N) Statement in which Haiman either admitted or denied the facts contained in the Village's Rule 12(M) Statement. Haiman also submitted a statement of additional facts pursuant to Rule 12(N)(3)(b). The Village, however, never responded to those facts as provided for by Rule 12(M). Thus, to the extent that those facts are supported by the record, they are deemed admitted as they are uncontested. *E.g., Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir.1997); *Benion v. Bank One, Dayton,* 967 F.Supp. 1031, 1033 n. 1 (N.D.Ill.1997).

## B. *Standard for deciding a motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

## C. *Haiman's ADA claims*

The ADA prohibits covered employers from discriminating against qualified individuals with a disability. *Sutton v. United Airlines, Inc.,* —— U.S. ——, 119 S.Ct. 2139, 2144–45, —— L.Ed.2d —— (1999). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■ In order to invoke the protection of the ADA, the plaintiff must show that he suffers from a "disability" as that term is defined by the ADA. *Homeyer v. Stanley Tulchin Assocs., Inc.,* 91 F.3d 959, 961 (7th Cir.1996). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, to fall within this definition, one must either (1) have an actual disability (subsection (A)); (2) have a record of a disability (subsection (B)); or (3) be regarded as having a disability (subsec-

tion (C)). *Sutton,* — U.S. ——, 119 S.Ct. 2139, 2144, — L.Ed.2d ——.

■ In order to successfully oppose a motion for summary, the plaintiff must come forward with evidence that shows that he could meet his ultimate burden of showing an ADA recognized disability. *DePaoli v. Abbott Labs.,* 140 F.3d 668, 672 (7th Cir.1998). The determination of whether the plaintiff suffers from a "disability" as defined by the ADA is an individualized inquiry that must be made on a case-by-case basis. *Sutton,* — U.S. ——, 119 S.Ct. 2139, 2146, — L.Ed.2d ——; *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995); *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.").

The Village has moved for summary judgment, arguing that Haiman cannot meet her burden of proving that she is "disabled" as that term is defined by the ADA. Haiman opposes the motion for summary judgment, arguing that she is disabled because she (1) falls within subsection (A) of the ADA's disability definition because she has an actual disability and/or (2) falls within subsection (C) of the ADA's disability definition because the Village regarded her as having a disability. The court examines each of these arguments in turn.

### 1. Whether Haiman falls within subsection (A) of the ADA's disability definition

The first issue before the court is whether Haiman has adduced evidence which would allow a reasonable jury to find that she falls within the ADA's definition of disability in subsection (A), *i.e.,* that she has a physical or mental impairment that substantially limits her in one or more major life activities. Haiman claims that she has. First, Haiman argues that she

has submitted evidence which shows that she has an actual disability because if she were not taking the cardiac medications, her heart condition would substantially limit one or more major life activity. Second, Haiman argues that she has submitted evidence that even while taking the cardiac medications, her heart condition has substantially limited her ability to work because she was put on a medical leave of absence because of her heart condition. The court examines each of these arguments in turn.

■ Haiman's first argument is that the evidence shows that she has an actual disability because if she were not taking the cardiac medications, her heart condition would substantially limit her ability to breathe, talk, walk, take care of herself, exert herself in any manner and work. The court rejects this argument.

■ When determining whether an individual is "substantially limited" in a major life activity and, thus, "disabled" under the ADA, the court must take into consideration the effects of any corrective measures that the person is taking, including medications. *Sutton,* — U.S. ——, 119 S.Ct. 2139, 2146, — L.Ed.2d ——; *Murphy v. United Parcel Serv., Inc.,* — U.S. ——, 119 S.Ct. 2133, 2147, — L.Ed.2d —— (1999). "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." *Sutton,* — U.S. ——, 119 S.Ct. 2139, 2146, — L.Ed.2d ——.

In this case, the court must take into consideration the effects of the cardiac medications that Haiman was taking. It makes no difference what Haiman's condition would have been had she not been taking the cardiac medications. Accordingly, the court rejects Haiman's argument that she has an actual disability because

her heart condition would substantially limit one or more major life activity if she were not taking the cardiac medications.

Haiman's second argument is that the evidence shows that she had an actual disability even while taking the cardiac medications because she was put on a medical leave of absence because of her heart condition, which substantially limited her ability to work. The Village does not dispute that Haiman's heart condition constitutes a physical impairment within the meaning of the ADA, *see* 29 C.F.R. § 1630.2(h)(1) (defining a "physical impairment" as "[a]ny physiological disorder, or condition ... affecting one or more of the following body systems: ... cardiovascular"), or that working is a major life activity, *see* § 1630.2(i) (listing working as an example of a major life activity).[2] The Village argues that Haiman cannot make the requisite showing of a "substantial limitation."

A "disability," as that term is defined under the ADA, exists only where an impairment "substantially limits" a major life activity. *Albertsons, Inc.,* ── U.S. ──, 119 S.Ct. 2162, 2168–69, ── L.Ed.2d ──; *Sutton,* ── U.S. ──, 119 S.Ct. 2139, 2146, ── L.Ed.2d ──. The ADA does not define "substantially limits"; however, " 'substantially' suggests 'considerable' or 'specified to a large degree.' " *Sutton,* ── U.S. ──, 119 S.Ct. 2139, 2150, ── L.Ed.2d ──. The EEOC regulations define "substantially limits" as meaning that the individual is either unable to perform a major life activity or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major

life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1); *Homeyer,* 91 F.3d at 961. In determining whether an impairment substantially limits a major life activity, the court must consider evidence of the nature and severity of the impairment, its duration, and whether it will have a permanent or long-term impact. 29 C.F.R. § 1630.2(j)(2); *Hirsch v. National Mall Serv., Inc.,* 989 F.Supp. 977, 981 (N.D.Ill. 1997). The temporarily disabled are not protected by the ADA. *Matthews v. Commonwealth Edison Co.,* 128 F.3d 1194, 1197 (7th Cir.1997) (citing 29 C.F.R. Pt. 1630, App. § 1630.2(j)).

It is the ADA plaintiff's burden to prove a disability by offering evidence that the extent of the limitation in term of his own experience is substantial. *Albertsons, Inc.,* ── U.S. ──, 119 S.Ct. 2162, 2169–70, ── L.Ed.2d ──; *Hirsch,* 989 F.Supp. at 981. Whether an impairment ˌin fact substantially limits a major life activity with respect to a particular individual is an individualized determination that must be made on a case-by-case basis. *Albertsons, Inc.,* ── U.S. ──, 119 S.Ct. 2162, 2168–69, ── L.Ed.2d ──; *see also Homeyer,* 91 F.3d at 962.

Having considered the evidence in this case and the factors relevant to determining whether the impairment "substantially limited" her ability to work, the court finds that Haiman has failed to adduce evidence which creates a genuine issue of material fact as to whether her heart condition has substantially limited her ability to work. It is true that Haiman has submitted evidence which shows that she has a serious heart condition; however, she has failed to

**2.** The parties have not questioned the EEOC's regulations and interpretive guidelines relating to the ADA's definitional section. Accordingly, for the purpose of this motion, the court assumes that the regulations are valid and

makes no decision as to what level of deference, if any, they are due. *Albertsons, Inc. v. Kirkingburg,* ── U.S. ──, 119 S.Ct. 2162, 2172–73 n. 10, ── L.Ed.2d ── (1999); *Sut-*

adduce any evidence which shows that her heart condition has substantially limited her ability to work. In fact, the evidence shows otherwise, i.e., that her heart condition has not substantially limited her ability to work. Haiman testified at her deposition that as of February 1, 1993, her heart condition did not affect her ability to talk, breathe, perform manual tasks other than lifting objects over ten pounds, see, hear, learn, take care of herself, or work. (Haiman Dep. at 143–44.) She has offered no evidence of any restrictions that were put on her ability to work after her doctor released her to return to work on February 3, 1993. In addition, Haiman admits that she has been continuously employed by and performing bookkeeping duties for ELBT Construction since October of 1993.[3] Such evidence directly contradicts Haiman's claim of an actual disability. *See Korzeniowski v. ABF Freight Sys., Inc.,* 38 F.Supp.2d 688, 693 (N.D.Ill.1999) (rejecting plaintiff's claim that he was actually disabled under the ADA's disability definition, stating that "[i]t would indeed be a bizarre notion of disability under which [the plaintiff] could claim statutory incapacity even while he is holding and performing an essentially equivalent job"); *see also Matthews,* 128 F.3d at 1197–98 (doubting whether plaintiff was disabled under the ADA because he had recovered fully and was working full-time for another employer in a job similar to the one held at the defendant's business).

The only evidence to which Haiman points to prove that her heart condition substantially affected her ability to work is that she had to take time off of work because of her heart condition. Haiman did not work from August 3, 1992 until early September of 1992 and was put on a medical leave of absence from November 23, 1992 until February 3, 1993. This evidence is insufficient. Haiman's inability to work was of a limited duration and was only temporary. Her leaves from work amount only to a time period of three to three and a half months, with the longest period lasting only a few days over two months. Even viewing the evidence in the light most favorable to Haiman, the court finds that the evidence shows that her inability to work was not permanent and was of such a limited duration that it was not a "substantial limitation" on her ability to work. *See McDonald v. Commonwealth of Pa., Dep't of Pub. Welfare, Polk Ctr.,* 62 F.3d 92, 96 (3rd Cir.1995); *see also Feldman v. American Mem'l Life Ins. Co.,* No. 96 C 3371, 1998 WL 102663, at *5 n. 1 (N.D.Ill. Mar.3, 1998).

In sum, Haiman has failed to adduce evidence that she has an actual disability as that term is defined by the ADA. It is undisputed that Haiman suffers from a physical impairment. However, Haiman has failed to adduce evidence which shows that her physical impairment has substantially limited her ability to work. Haiman testified at her deposition that her heart condition did not affect her ability to work and admits that she is and has been since October of 1993 continuously employed by and performing bookkeeping duties for another company. The only evidence on which Haiman relies to prove a substantial limitation is evidence of the brief period of time that she was unable to work because of her heart condition, a time period that lasted no more than three to three-and-one-half months in total, with the longest period lasting just a few days over two months. Such evidence is insufficient to create a genuine issue of fact as to whether Haiman's heart condition has "substantially limited" her ability to work. Accordingly, the court finds that the Village is entitled to summary judgment on Haiman's ADA claim insofar as that claim is based on Haiman's claim that she has an

---

*ton,* —— U.S. ——, 119 S.Ct. 2139, 2146, —— L.Ed.2d ——.

**3.** Haiman notes in her Rule 12(N) Statement that " 'continuous employment' is not synony-

mous with 'working without medical leaves of absence.' " (Pl.'s 12(N) Statement ¶ 15.) Haiman, however, has offered no evidence of any medical leaves that she was required to take while working for ELBT Construction.

actual disability as that term is defined in 42 U.S.C. § 12102(2)(A).

## 2. Whether Haiman falls within subsection (C) of the ADA's disability definition

The next issue before the court is whether Haiman has adduced evidence which would allow a reasonable jury to find that she falls within the ADA's definition of disability in subsection (C), i.e., that she was regarded as having a physical or mental impairment that substantially limits one or more major life activity. Haiman claims that she had adduced such evidence, while the Village contends that Haiman's evidence fails to prove that the Village regarded her as having a disability.

■ Before addressing the evidence and the parties' arguments, the court must address the Village's "objection" to Haiman's reliance on this theory.[4] In its reply brief, the Village complains that "Haiman for the first time since she filed her EEOC charge in 1993, claims that Fox Lake discriminated against her because it 'regarded' her as having an impairment that substantially limited a major life activity." (Def.'s Reply at 7.) The Village also states: "In an 11th hour effort to avert summary judgment, Haiman now makes the claim that she has satisfied her threshold burden as to both the actual disability and the perceived disability prongs of the ADA definition of disability." (*Id.* at 3.) The Village goes on to argue that "[e]ven if this new claim can be raised at this stage of the litigation, there are not facts in the record that support the claim." (*Id.* at 2.)

Although it appears from the above statements that the Village does not believe it is fair for Haiman to rely on subsection (C) of the ADA's disability definition, the Village never really makes a formal objection to Haiman's reliance on this theory. However, even if the above statements could be read as making a

formal objection to Haiman's reliance on this theory, the court would overrule such an objection based on the Seventh Circuit's decision in *Riemer v. Illinois Department of Transportation,* 148 F.3d 800 (7th Cir.1998).

In *Riemer,* the defendant argued that the plaintiff should not have been allowed to rely on the perception prong of the ADA's disability definition because the plaintiff did not raise that theory in his complaint. *Id.* at 804. Addressing this argument, the Seventh Circuit stated: "Under the Federal Rules of Civil Procedure, complaints are to be construed liberally. Accordingly, a plaintiff is not required to plead facts or evidence to support his claims; nor is he required to set forth explicitly his theory of the case." *Id.* (internal citation omitted). The court observed that in three paragraphs of the plaintiff's complaint, the plaintiff had incorporated the ADA's definition of disability, which includes the perception prong. *Id.* As an example, the court quoted paragraph five which alleged:

> That in July of 1991 the Plaintiff ... was diagnosed to suffer from asthma and at all times relevant to the above captioned proceeding subsequent to that time has been treated for his asthmatic condition. This condition constitutes a disability as that term is defined in 42 U.S.C. § 12102(2).

*Id.* at 804 n. 3. The court found that given the "generous reading mandated by the Civil Rules," the plaintiff's complaint was sufficient to give the defendant notice that the plaintiff's theory of the case included a claim based on the perception prong of the ADA's disability definition. *Id.*

Similar to the plaintiff's complaint in *Riemer,* Haiman incorporated the ADA's disability definition in her complaint. Specifically, Haiman alleges in her complaint that she "has a 'disability' within the meaning of the ADA § 3(2), 42 U.S.C.

4. The court has put the word "objection" in quotes because, as explained below, the Vil-

lage never makes a formal objection to Haiman's reliance on this theory.

§ 12102(2) because she suffers from heart disease." (Compl. ¶ 4.) She never states that she is only relying on subsection (A), and she never states that she is not relying on subsection (C). As did the Seventh Circuit in *Riemer*, this court finds that Haiman's complaint is sufficient under the Federal Rules to give the Village notice that Haiman's case included a claim based on the perception prong of the ADA's disability definition.

Having determined that Haiman is not precluded from relying on this theory, the court now turns to the question of whether Haiman has adduced evidence which would allow a reasonable jury to conclude that she falls within subsection (C) of the ADA's disability definition, i.e., that the Village regarded Haiman as having a disability. For the following reasons, the court finds that she has.

■ There are two ways in which an individual may show that he fits within subsection (C) of the ADA's disability definition: (1) the covered entity mistakenly believes that the individual has a physical impairment that substantially limits one or more major life activities, or (2) the covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *Sutton,* —— U.S. ——, 119 S.Ct. 2139, 2149, —— L.Ed.2d ——; *see also* 29 C.F.R. § 1630.2(*l*)(1)–(3). "In both cases," the Supreme Court has explained, "it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment

is not so limiting." *Sutton,* —— U.S. ——, 119 S.Ct. 2139, 2149, —— L.Ed.2d ——.

The EEOC's regulations provide that a plaintiff may satisfy the "regarded as" test by showing that he suffers from "a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as such [a] limitation." 29 C.F.R. § 1630.2(*l*)(1); *Riemer,* 148 F.3d at 806. A covered entity regards an employee's condition as "substantially limiting" if it perceives the employee to be "significantly restricted as to the condition, manner, or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii); *Riemer,* 148 F.3d at 806.

■ In this case, Haiman has adduced sufficient evidence to create a genuine issue of fact as to whether Hoehne, who was the Village's agent, regarded Haiman as having a physical impairment that substantially limited her ability to work. The log that Hoehne kept on Haiman shows that Hoehne was aware that Haiman had had a heart attack and was undergoing different procedures in an attempt to treat her heart condition.[5] Haiman testified at her deposition that after she returned to work, Haiman thought that Hoehne's attitude towards her had changed, which Haiman believed was due to Hoehne's concern that Haiman would have a heart attack at the office. When Haiman offered to work part-time, Hoehne rejected the offer, stating that she wanted Haiman well and working only on a full-time basis because she did not need any part-time help. In addition, Hoehne told her assistant that Haiman was not a reliable employee because Hai-

---

5. The court has serious doubts as to the admissibility of this log; however, the Village has not objected to the admissibility of this log on any grounds. Accordingly, the court will consider the log as evidence when ruling on this motion for summary judgment. This does not mean, however, that the Village is precluded from objecting to the admissibility of the log on a future motion for summary judgment, by way of a motion *in limine,* or at trial.

man was sick all of the time.[6] Viewing this evidence and the reasonable inferences that can be drawn therefrom in the light most favorable to Haiman, the court finds that a reasonable jury could find that Hoehne regarded Haiman as being significantly restricted in her ability to work.

The Village argues that Hoehne's statement to her assistant that Haiman was not a reliable employee because Haiman was sick all of the time does not prove that Hoehne regarded Haiman as being disabled. The Village argues that the "statement merely reflects the truth," which is that "Haiman had been off work due to illness most of the time from August, 1992 to the time of her discharge." (Def.'s Reply at 10.) The Village argues that "the ADA does not protect an employee from being fired because of illness." (*Id.*)

With respect to Hoehne's statement, it may be that it reflected the truth as Hoehne saw it. The court finds, however, it can be reasonably inferred from the statement that Hoehne regarded Haiman as being significantly restricted in her ability to work because of her heart condition.

With respect to the Village's argument that the ADA does not protect an employee from being fired because of illness, the Village's point is well taken. As the Seventh Circuit has explained:

> The [ADA] is not a general protection of medically afflicted persons. It protects people who are discriminated against by their employer ... either because they are in fact disabled or because their employer mistakenly believes them to be disabled. If the employer discriminates against them on account of their being ill, even permanently ill, but not disabled, there is no violation.

*Christian v. St. Anthony Med. Ctr.*, 117 F.3d 1051, 1053 (7th Cir.1997). One rea-

sonable inference from the evidence is that Hoehne regarded Haiman as having an illness but not a disability. Another reasonable inference, however, is that Hoehne regarded Haiman as being disabled, i.e., as being significantly restricted in her ability to work. It is not the court's role to choose between these two inferences on a motion for summary judgment.

In sum, viewing the evidence in the light most favorable to Haiman, the court finds that a reasonable jury could find that Hoehne regarded Haiman's heart condition as significantly restricting her ability to work. Accordingly, the court denies the Village's motion for summary judgment on Haiman's ADA claim insofar as the claim is based on Haiman's claim that the Village regarded her as having a disability as that term is defined in 42 U.S.C. § 12102(2)(C).

### III. *CONCLUSION*

In sum, Haiman has failed to adduce evidence which shows that she was "disabled" under the terms of the ADA because she suffered from an actual disability. However, Haiman has adduced evidence which, when viewed in the light most favorable to her, would allow a reasonable jury to find that the Village regarded Haiman as having a disability. Accordingly, the court (1) grants the Village of Fox Lake's motion for summary judgment on plaintiff Carolyn Haiman's ADA claim insofar as it is based on her claim that she has an actual disability and (2) denies the motion for summary judgment on plaintiff Carolyn Haiman's ADA claim insofar as it is based on her claim that the Village regarded her as having a disability.

---

**6.** The court also has serious doubts as to the admissibility of any of this evidence, including the many out-of-court statements. The Village, however, has not properly objected to the admissibility of this evidence. Therefore, the court will consider this evidence when

ruling on this motion for summary judgment. This does not mean, however, that the Village is precluded from objecting to this evidence on a future motion for summary judgment, by way of a motion *in limine*, or at trial.