Carolyn A. HAIMAN, Plaintiff,

v.

VILLAGE OF FOX LAKE, Defendant.

No. 98 C 0158.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 21, 2000.

**950**

Laurie J. Wasserman, Law Offices of Laurie J. Wasserman, Skokie, IL, Deborah M. Kennedy, Karen I. Ward, Equip for Equality, Inc., Chicago, IL, for plaintiff.

Joshua David Holleb, Michael A. Paull, Klein, Dub & Holleb, Limited, Highland Park, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the Village of Fox Lake's motion for summary judgment. For the following reasons the court grants in part and denies in part the motion.

### I. BACKGROUND[1]

From August of 1988 until February 1, 1993, plaintiff Carolyn A. Haiman ("Haiman") was a bookkeeper for the Treasurer's Department of defendant Village of Fox Lake ("the Village"). Haiman is suing the Village under the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. §§ 12101–12213, claiming that the Village violated the ADA by denying her reasonable accommodation and firing her because of her heart condition. This court has subject matter jurisdiction over the case pursuant to 42 U.S.C. §§ 2000e–5(f)(3) and 12117(a). In an earlier motion for summary judgment in this case, the court ruled that Haiman failed to raise a

genuine issue of material fact with respect to her claim that she was actually disabled under subsection A statutory definition set forth in the ADA. *See Haiman v. Village of Fox Lake*, 55 F.Supp.2d 886 (N.D.Ill. 1999). Accordingly, that claim was dismissed.

The court has already discussed many of the uncontroverted facts of this case in its earlier opinion. For the sake of brevity, the court will not restate all the facts. The facts may be found in *Haiman*, 55 F.Supp.2d 886. However, to be clear, the court will provide a brief summary. Any additional facts which pertain to the present motion for summary judgment will be addressed in the pertinent section.

Since August of 1992, Haiman has suffered from severe coronary artery disease. On August 3, 1992, Haiman suffered a heart attack. On August 11, 1992, she underwent cardiac catheterization and angioplasty and was treated with several medications. Haiman returned to work for the Village in September of 1992. In October of 1992, Haiman developed recurrent chest pain. Then, on November 23, 1992, Haiman was administered a thallium stress test which she failed. Following an angiogram and angioplasty, Haiman was released from the hospital and told to take certain medications. Haiman was also instructed to remain off work pending further evaluation of her medical condition.

On December 17, 1992, Haiman underwent another thallium stress test, which was discontinued when Haiman became symptomatic. Haiman remained on medical leave from her job at the Village until her termination on February 1, 1993.

---

1. Unless otherwise indicated, the following facts are taken from the parties' Local General Rule 12(M) and 12(N) statements. Local General Rule 12 has been renumbered. The Local General Rule governing summary judgment motions is now LOCAL R. 56.1. Both the old and the new rule require the movant to file a statement of facts it claims is uncontroverted, *see* FORMER LOCAL GEN.R. 12(M); LOCAL R. 56.1(a)(3), and the non-movant to file a response to that statement, *see* FORMER LOCAL

GEN.R. 12(N); LOCAL R. 56.1(b)(3). However, because the Village filed its summary judgment motion prior to the renumbering of the local rules—and both parties refer to their respective statements under the former rule—the court will refer to the former Rule 12. *See infra* Sect. II.B (addressing the impact of Haiman's failure to comply with Local General Rule 12 on the court's determination of the undisputed facts).

At all times from August of 1992 until February of 1993, Frank Meier ("Meier") was the mayor of the Village and Marilyn Hoehne ("Hoehne") served as the Village Treasurer and Haiman's supervisor.

Meier's position as mayor of the Village was part-time. Because the position of mayor was part-time, Meier entrusted the department heads with the responsibility of managing the day-to-day operations of their respective departments. As Village Treasurer, Hoehne was a full-time department head at the Village. Thus, it can be inferred that Meier gave Hoehne the responsibility of running the day-to-day operations in the Treasurer's office. Up until her medical leave, Haiman's position as a bookkeeper for the Village was full-time.

In late January or early February of 1993, Hoehne met with Meier to discuss Haiman. Hoehne gave Meier a memo which claimed that Haiman (1) failed to communicate with Hoehne regarding her medical condition; (2) violated personnel policy through her non-communication regarding her extended medical leave; and (3) was working at the Davis–Clow Insurance Company ("Davis–Clow"), doing the same job she had done for the Village. (*See.* Pl.Br. in Opp'n to Def.Mot. for Summ.J., Ex. H.) Also, Hoehne apparently kept a log, documenting the events during Haiman's medical leave. (*Id.*) Based upon the allegations in the memo, Hoehne "request[ed] that [Haiman] be terminated from our employ." (*Id.*) Hoehne also telephoned Davis–Clow to determine whether Haiman was, in fact, working for that company.

Following this meeting Meier claims that he telephoned Davis–Clow and received confirmation that Haiman had been working there.[2] (*See id.,* Ex. A, at 24:3–25; 126:4–24.) Meier did not look into any of the other allegations in Hoehne's memo. On February 1, 1993, Meier telephoned Haiman and terminated her employment with the Village.

Meier had no knowledge that Haiman had provided medical documents to Hoehne. Further, Meier was unaware that Haiman had requested to return to work part-time for the Village but that Hoehne would not allow it. However, Meier stated in his deposition that he would have let Haiman come back to work part-time. (*Id.* at 111:16–22.)

The Village has moved for summary judgment, arguing that Haiman cannot meet her burden of proving that she is "disabled" as that term is defined by the ADA.[3] First, the Village argues that Haiman has failed to raise a genuine issue of material fact as to whether the Village violated subsection C of 42 U.S.C. § 12102(2) by terminating Haiman because of a perceived disability. Particularly, the Village argues that the decision to terminate Haiman's employment was made by Meier and there is no evidence which would allow a reasonable jury to infer that Meier perceived Haiman as disabled. In the alternative, the Village argues that even if Hoehne, not Meier, was the decision-maker, Haiman has not presented any admissible evidence to prove that Hoehne perceived Haiman as disabled. Second, the Village argues that it did not violate subsection B of 42 U.S.C. § 12102(2) by terminating Haiman because of a record of a disability. The Village contends that, because this court has already ruled that Haiman is not actually disabled as defined by the ADA, *see Haiman,* 55 F.Supp.2d at

---

**2.** Meier claims that others were present when he called Davis–Clow; to the best of his recollection, his assistant Susan McNally and one or both of the Village attorneys (Howard Teegin and Gil Johnson) were present. However, according to the parties Stipulation of Uncontested Facts (submitted with the Final Pre–Trial Order), neither Teegin or Johnson were present for that phone call. (Pl.Br. in Opp. to Def.Mot. for Summ.J., Ex. N.) Further, in her deposition, McNally claims she has no knowledge of any independent investigation conducted by Meier. (*Id.,* Ex. B, at 74.)

**3.** This court has already determined that Haiman has failed to raise a genuine issue of material fact as to subsection A of 42 U.S.C. § 12102(2). *See Haiman,* 55 F.Supp.2d at 891–94.

892–93, there can be no record of such a disability.

Haiman opposes the motion for summary judgment, arguing that she is disabled because she falls within subsection C's definition of a disabled person. Particularly, Haiman argues that Hoehne made the decision to terminate her employment based upon Hoehne's perception of Haiman as disabled. Further, Haiman argues that she was disabled under subsection B's definition of a disabled person because there existed a record of her disability.

## II. *DISCUSSION*

### A. *The Village's Motion in Limine*

As a threshold issue, the court will dispose of the Village's motion *in limine* because it is necessary to establish what evidence is admissible, and therefore properly before this court, in support of the Village's motion for summary judgment. The evidence at issue in the motion *in limine* is the following: (1) a log allegedly kept by Hoehne that documents Haiman's employment history following Haiman's second heart attack; (2) a statement made by Hoehne to Haiman in which Hoehne allegedly said she did not want anybody "dropping dead in my office and me paying for it"; (3) a statement made by Hoehne to a former associate in which Hoehne allegedly said that Haiman was causing everyone's insurance rates to rise; and (4) the testimony of medical experts or Haiman's doctors.

Ruling on a previous motion for summary judgment in this case, the court found that the above evidence was sufficient to create a genuine issue of material fact as to whether Hoehne regarded Haiman as having an impairment which substantially limited her ability to work. *Haiman*, 55 F.Supp.2d at 894–96. However, in that ruling, the court expressed serious

doubts as to the admissibility of the statements allegedly made by Hoehne,[4] as well as the log. *Id.* at 896, n. 5–6. Because the Village had not objected to the admissibility of the log and the out-of-court statements at that time, the court considered the evidence in that summary judgment motion, but did not preclude the Village from later challenging the admissibility of that evidence in a later motion for summary judgment, motion *in limine*, or at trial. *Id.* The Village then filed a motion *in limine*, seeking the exclusion of the log and the out-of-court statements allegedly made by Hoehne. The court addresses those arguments now.

### 1. *Admissibility of the log*

The Village moves to exclude the log allegedly kept by Hoehne on the basis that it cannot be authenticated or attributed to any author. (Def.Mot. *in Limine* at 4–5; *see* Pl.Br. in Opp'n to Def.Mot. for Summ. J., Ex. H.) The Village contends that Haiman has not offered the testimony of any person with first-hand knowledge about the log. In fact, the Village points out that Meier—the person to whom the log was addressed—testified that he had no recollection of seeing the log or notes.[5] (Pl.Br. in Opp'n to Def.Mot. for Summ.J., Ex. A, at 103–104:12.)

Although Federal Rule of Evidence 901 governs the authenticity of non-testimonial evidence, it is in the discretion of the court to determine whether evidence is admissible. *See United States v. VanWyhe*, 965 F.2d 528, 532–33 (7th Cir.1992) (excluding a book from evidence because the defendant failed to present a witness with personal knowledge of that book). Under the Federal Rules of Evidence, a party must meet the threshold standard of Rule 901(a) in order to admit evidence into the record. FED.R.EVID.P. 901(a). While the founda-

---

4. Marilyn Hoehne is now deceased and, consequently, cannot be questioned as to the accuracy or actual existence of such statements.

5. Meier did testify that he recalled receiving a letter drafted by Hoehne in which she referred to the "attached" log. However, Meier could not identify what Haiman presented as the log kept by Hoehne, nor could he recall ever seeing the log. (Pl.Br. in Opp'n to Def. Mot. for Summ.J., Ex. A, at 103–104:12.)

tion for the authenticity of the evidence need not be concrete, the party seeking admission of the evidence must show that the evidence is what it purports to be. *Id.* In the present case, the Village argues that Haiman has failed to present any witness with first-hand knowledge of the log. Meier testified in his deposition that he had no knowledge of the log, nor could he identify the exhibit which purported to be the log kept by Hoehne. On the contrary, Haiman argues that because a memo from Hoehne to Meier refers to a log—and Meier recognized that memo— the log is admissible under circumstantial evidence. The court disagrees.

■ The log is not titled, signed, or dated. In fact, it has no identification whatsoever on its face. Not one witness can identify the exhibit as the purported log of Hoehne, nor does any witness presented have first-hand knowledge about the exhibit. The one witness most likely to identify the log—Meier—stated that he did not recognize the exhibit nor did he recall ever seeing the log kept by Hoehne. Thus, Haiman has failed to establish the threshold standard of authenticity required by Federal Rule of Evidence 901. Accordingly, the log is inadmissible.

### 2. *Admissibility of Hoehne's out-of-court statements*

The Village moves to exclude Hoehne's out-of-court statements on the grounds that (1) the statements are inadmissible hearsay or, alternatively, (2) the statements are not relevant because the decision to terminate was made by Meier, not Hoehne. (Def.Mot. *in Limine,* at 2–3.) Haiman, on the other hand, argues that the statements are not hearsay because (1) they are not offered for the truth of the matter asserted, but only to show that Hoehne perceived Haiman as disabled, and (2) they are admissions by a party opponent and, therefore, non-hearsay. (Pl. Resp. to Def.Mot. *in Limine* at 4–7.) The court agrees with Haiman.

■ First, the court will address the issue of hearsay. These statements are non-hearsay under Rule 801(d)(2) of the Federal Rules of Evidence. Rule 801(d)(2) defines non-hearsay, in relevant part, as: "[a] statement offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or . . . (D) a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED.R.EVID.P. 801(d)(2).

To be an admission by a party opponent, a statement need only be (1) made by an agent; (2) acting within the scope of employment; and (3) made during the existence of the employment relationship. *Id.* The Federal Rules of Evidence do not require that the agent have the authority to speak for the employer (in order to admit the agent's statement into evidence), but only that the statement be made within the scope of employment and is offered against the party. *Id.; see also* WIESSENBERGER's FED.EVID. § 801.18 (2nd ed.1995) (explaining that the "statement need not be against interest when it was made"). In this case, Hoehne was a full-time employee, serving as a department head and the Village Treasurer. Hoehne was also Haiman's supervisor during the period when the statements were allegedly made. Given her substantial role in the daily operations of the Village, Hoehne was an agent of the Village. Because Hoehne's statements were made about a Village employee whom she supervised, they are admissions by a party opponent. Accordingly, these statements are admissible.

Next, the Village argues that even if the statements are non-hearsay, they should be excluded from evidence. The Village contends that, because the decision to terminate was made by Meier, Hoehne's statements are not related to the decision to terminate Haiman's employment and are, therefore, irrelevant. The court disagrees. As will be discussed, *infra* Sect. II.D.1, the court finds there is genuine issue of material fact regarding who made

the decision to terminate. Thus, the statements are relevant and admissible.

### 3. *Admissibility of medical testimony*

The Village moves to exclude any medical expert testimony and the testimony of Haiman's doctors relating to Haiman's heart condition. Although this issue is not relevant to the present summary judgment motion, it is addressed as part of the Village's motion *in limine.*

Because the court has already ruled that Haiman does not have an actual disability, the Village argues that such medical testimony is irrelevant. Haiman claims that she will use such evidence in her remaining ADA claims. The court will first address the admissibility of medical experts.

█ The court agrees with the Village that testimony of medical experts is irrelevant as it does not relate to Haiman's remaining claims. Such medical testimony is not relevant in establishing whether the Village regarded Haiman as disabled: that claim focuses on a mistaken belief. *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450 (1999). Further, because Haiman failed to adduce evidence establishing a record of a disability, *see infra* Sect. II.D.2, the medical testimony is irrelevant to that claim. Accordingly, the testimony of medical experts in excluded.

Second, the Village moves to exclude the testimony of Haiman's treating doctors. Haiman argues that such testimony is relevant to authenticate written communications with Hoehne. Because neither party has specifically stated what the doctors would or would not testify to at trial, the court cannot determine whether such testimony would be relevant in determining how Hoehne, as an agent of the Village, viewed Haiman's heart condition. Therefore, the court will not exclude, summarily, any testimony from Haiman's treating doctors. This does not, however, preclude the Village from renewing such an objection in the future.

In sum, the court grants the Village's motion to exclude from evidence the log and testimony from medical experts. The court denies the Village's motion to exclude from evidence Hoehne's statements and testimony from Haiman's treating doctors. Having decided the evidentiary issues raised in the Village's motion *in limine,* the court will proceed to the Village's motion for summary judgment.

### B. *Local General Rule 12*

In this case, the Village filed a proper Rule 12(M) Statement. In response, Haiman submitted a Rule 12(N) Statement in which Haiman either admitted or denied the facts contained therein. However, in several paragraphs, Haiman admitted or denied certain facts contained therein and then proceeded to raise additional factual assertions. (*See* Pl.Br. in Opp'n to Def. Mot. for Summ.J. ¶¶ 6, 7, 9, 12.) Such additional facts went beyond the "concise" response required by Rule 12(N)(3)(a). *Daulo v. Commonwealth Edison,* 938 F.Supp. 1388, 1395 (N.D.Ill.1996). The additional factual assertions should have been submitted with the separate statement of additional facts pursuant to Rule 12(N)(3)(b). *Id.* The Village would then have been required to respond to those additional facts or have them deemed admitted. *Id.*

The court could strike the additional factual assertions made in Haiman's Rule 12(N)(3)(a) response. *Daulo,* 938 F.Supp. at 1395 (citing *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994)). However, in fairness to Haiman, the court will not do so. Instead, the court will determine if the additional facts listed in the 12(N)(3)(a) response are supported by the evidence and then go from there.

### C. *Standard for Deciding a Motion for Summary Judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings, but must set forth specific facts showing that a genuine issue for trial exists. *Id.* at 256–57, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

### D. *Haiman's ADA Claims*

The ADA prohibits covered employers from discriminating against qualified individuals with a disability. *Sutton,* 527 U.S. at ——, 119 S.Ct. at 2144. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment positions that such individual holds or desires." 42 U.S.C. § 12111(8).

In order to invoke the protection of the ADA, the plaintiff must show that he suffers from a "disability" as that term is defined by the ADA. *Homeyer v. Stanley Tulchin Assocs., Inc.,* 91 F.3d 959, 961 (7th Cir.1996). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

To successfully oppose this motion for summary judgment, Haiman must come forward with evidence that shows that she can meet the ultimate burden of showing an ADA recognized disability. *DePaoli v. Abbott Labs.,* 140 F.3d 668, 672 (7th Cir. 1998). The determination of whether the plaintiff suffers from a "disability" as defined by the ADA is an individualized inquiry that must be made on a case-by-case basis. *Sutton,* 527 U.S. at ——, 119 S.Ct. at 2145; *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995).

Haiman asserts that she is a "qualified individual with a disability" under the ADA because the Village regarded her as suffering from a disability due to her heart condition. Thus, she claims that she is a disabled person under subsection C of the ADA's disability definition. Haiman also claims that she qualifies as an individual with a disability under subsection B because she had a record of a disability with the Village.

### 1. *Whether Haiman falls within subsection C of the ADA's disability definition*

The first issue before the court is whether Haiman has adduced evidence which would allow a reasonable jury to find that she falls within the ADA's definition of a disability in subsection C. In other words, has Haiman adduced evidence that shows the Village regarded her as having a physical or mental impairment that substantially limits one or more major life activity. *See Sutton,* 527 U.S. at ——, 119 S.Ct. at 2150. Haiman claims she has adduced such evidence, while the Village contends that Haiman's evidence fails to prove that the Village regarded her as having a disability.

In support of its motion for summary judgment, the Village asserts that Meier, who was mayor of the Village at the time of Haiman's termination, made the decision to terminate Haiman's employment. The Village further contends that Haiman has produced no evidence that creates a

genuine issue of fact as to whether Meier perceived Haiman as having a physical impairment that substantially limited her ability to work. In response, Haiman argues that her supervisor, Hoehne, made the decision to terminate Haiman's employment and that the evidence adduced does, in fact, create a genuine issue of material fact as to whether Hoehne regarded Haiman as having a physical impairment. Haiman points to the following evidence in support of this argument: (1) a statement made by Hoehne to Haiman in which Hoehne allegedly said she did not want anybody "dropping dead in my office and me paying for it"; (2) a statement made by Hoehne to a former associate in which Hoehne allegedly said that Haiman was causing everyone's insurance rates to rise; and (3) a memo from Hoehne to Meier with an attached log allegedly kept by Hoehne that documents Haiman's employment history following Haiman's second heart attack. Because the log is inadmissible, *see* Sect. II.A, the court will disregard it for purposes of this summary judgment motion. *See Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994); *Baxter v. Northwest Airlines, Inc.*, No. 96 C 2060, 1998 WL 603121, *4 (N.D.Ill. Sept.4, 1998) ("[the] court may only consider admissible evidence in ruling on a motion for summary judgment."). Thus, the only evidence the court will consider is the statements made by Hoehne and the memo to Meier.

■ Viewed in the light most favorable to Haiman, the remaining evidence is sufficient to create a genuine issue of material fact as to whether Hoehne, who was acting as the Village's agent, regarded Haiman as having a physical impairment that substantially limited her ability to work. *See Haiman*, 55 F.Supp.2d at 895–96 (ruling that it could be reasonably inferred from Hoehne's statements that Hoehne "regard-

ed Haiman as being significantly restricted in her ability to work because of her heart condition").[6]

The Village contends, however, that Hoehne's alleged perceptions are irrelevant because Hoehne was not the decisionmaker. On the contrary, the Village argues that Meier was the sole decisionmaker with respect to the decision to terminate Haiman's employment. For that reason, the Village argues that it is entitled to summary judgment. The court disagrees.

Meier is the person who actually terminated Haiman's employment. However, he became aware of the situation after Hoehne sent him a memo recommending that Haiman be terminated. Based upon the evidence presented, especially Meier's own deposition testimony, it could be reasonably inferred that Meier relied on Hoehne's recommendation to terminate Haiman's employment.

Although Meier claims that he alone made the decision to terminate Hoehne, his deposition testimony is, at times, contradictory and ambiguous. For example, in his deposition, Meier states that he made the decision to terminate Haiman after conducting an "investigation" of his own. (Pl.Br. in Opp'n to Def.Mot. for Summ.J.Ex. A at 24:11–22; 48:22–25.) This investigation consisted solely of a telephone call to Davis–Clow. However, in that same deposition, Meier says repeatedly that he not only gave his department heads—which included Hoehne—autonomy to control their own departments, but that he usually deferred to their judgment on the operation of the department. (*Id.* at 82:1–3; 162:2–8; 92:7–9.) Meier stated on several occasions that he did "not go over the department heads" and that he deferred to the judgment of the department

---

**6.** The evidence offered by Haiman to support her claim in the first summary judgment motion was nearly identical. While the court expressed doubts as to the admissibility of such statements, the court did not rule on the issue of admissibility at that time due to the fact that neither party addressed that issue in its respective brief. The court's current rulings on the issue of admissibility are the result of a review of the law and the parties' briefs and motions *in limine*.

heads: "No, no. I didn't go over my department's heads—head on anything. I dealt only with the department head." (*Id.* at 82:1–3 (responding to a question about whether he would have looked into the truth of Hoehne's statements regarding Haiman's failure to produce medical documents).) When asked whether he ever contacted Haiman directly, Meier responded "I didn't discuss that. I didn't—'cause I would be going over my department's head if I would've brought [Haiman] in or questioned [Haiman] in detail." (*Id.* at 92:7–9.) Further, when asked if he had any independent knowledge whether or not all of the allegations made in the letter Hoehne drafted were true, Meier responded "No, I always relied on my department heads." (*Id.* at 108:10–15.) Finally, Meier admitted to relying upon Hoehne's recommendation:

> Q: "And so when you made the decision to terminate Ms. Haiman, you relied on Mrs. Hoehne's professional opinion or personal opinion, let's say, that she had not been adequately kept apprised of Ms. Haiman's medical condition?"
>
> A: "Well, she was the department head. I let her run her department."

(*Id.* at 162:2–8.)

Given Meier's own testimony, there is some ambiguity over the extent to which Hoehne's recommendation influenced Meier's decision. On a motion for summary judgment, any ambiguities in a witness's testimony must be resolved against the moving party. *Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir.1990). Therefore, while Meier may have made the decision to terminate Haiman, there exists a genuine issue of material fact with respect to Hoehne's input and influence on that decision.

▮ Normally, the plaintiff must prove that the decision-maker uttered the remarks.[7] However, if a plaintiff can show that the attitudes of the person who made the remarks tainted the decision maker's judgment, the remarks can be relevant to prove discrimination. *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1121 (7th Cir.1998). Although a decision-maker may be unbiased, a plaintiff can prove discrimination by showing that the decision to terminate was tainted by a recommendation from a biased individual or group. *Shager*, 913 F.2d at 405. The court must look at whether "the decision maker honestly relied on the proffered reason for firing the employee." *Hoffman*, 144 F.3d at 1123. (deciding that the plaintiff failed to establish that the proffered reason was pretextual under *McDonnell–Douglas* ).

Further, the Seventh Circuit has found that a decision-maker is "apt to defer to the judgment of the man on the spot." *Shager*, 913 F.2d at 405. In *Shager*, the district manager presented "plausible evidence" that plaintiff should have been discharged; the decision-maker was "not conversant with the possible age animus that may have motivated" the recommendation to terminate the plaintiff's employment. *Id.* However, the court found that if the decision-maker acts as the conduit of another's prejudice, the innocence of the decision-maker does not spare the company from liability. *Id.*

In this case, the Village claims that (1) Meier was the sole decision-maker; (2) Meier conducted an independent investigation into Hoehne's proffered reasons for terminating Haiman's employment with the Village; and (3) Meier's decision to terminate was based upon his independent investigation into Haiman's outside employment. (Def.Br. in Supp. of Mot. for Summ.J. at 4–6.) Haiman, on the other hand, argues that (1) Hoehne recommended that Haiman be fired; (2) Meier relied upon Hoehne's recommendation; (3) Hoehne's recommendation to terminate was based upon her prejudices against Haiman; and (4) Hoehne was, in reality,

---

7. Neither Haiman nor the Village has claimed that Meier made any statements or remarks regarding Haiman's physical condition.

the decision-maker. (Pl.Br. in Opp'n to Def.Mot. for Summ.J. at 9–11.)

In support of their claim that Meier was the decision-maker, the Village relies solely on Meier's deposition testimony. As noted previously in this opinion, Meier does state in his deposition that he, not Hoehne, made the decision to terminate Haiman, and that decision was based on his own independent investigation. However, this statement is not supported by any other evidence in the record. On the contrary, that statement is contradicted by (1) Meier's own affidavit given to the EEOC, during its investigation into Haiman's claims, which says nothing of Meier's own independent investigation despite referring to Hoehne's telephone call to Davis–Clow (*see* Pl.Br. in Opp'n. to Def. Mot. for Summ.J., Ex. L), and (2) the deposition testimony and EEOC affidavit of Meier's former assistant, Susan McNally (whom Meier claims was present when he placed the telephone call to Davis–Clow). (*Id.,* Exs. B, M.) Meier's statement—which serves the Village but has no real factual support—is not enough to preclude any question of a genuine issue of fact or entitle the Village to summary judgment. *See Beres v. Village of Huntley,* No. 92 C 20089, 1994 WL 97742, *1 (N.D.Ill. Mar.25, 1994) (citing *Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir. 1994)).

In sum, viewing the evidence in the light most favorable to Haiman, the court finds that a reasonable jury could find that Hoehne regarded Haiman's heart condition as significantly restricting her ability to work. Further, the court finds that a reasonable jury could also find that, even if Meier was the decision-maker, his decision could have been biased by the recommendation of Hoehne. Accordingly, the court denies the Village's motion for summary judgment on Haiman's ADA claim insofar as the claim is based on Haiman's claim that the Village regarded her as having a disability as that term is defined in 42 U.S.C. § 12102(2)(C).

### 2. *Whether Haiman falls within subsection B of the ADA's disability definition*

Haiman's final claim is that the Village violated subsection B of the ADA's definition of a disability. The Village moves for summary judgment on this claim, contending that Haiman has failed to create a genuine issue of material fact with respect to having a record of a disability. The court agrees with the Village.

In order to state a claim under subsection B of the ADA, 42 U.S.C. § 12102(2), Haiman must show that she has a record of a physical impairment that substantially impairs one or more major life activity. Haiman must further show that the Village relied on that record in deciding to terminate Haiman's employment. *See Hilburn v. Murata Elec. N. Am. Inc.,* 181 F.3d 1220, 1229 (11th Cir.1999). This claims fails for two reasons.

First, in order to seek protection under subsection B, Haiman must adduce evidence establishing that records show that she suffers from an impairment which substantially limits one or more major life activity. 42 U.S.C. § 12102(2). This court has already ruled that Haiman did not adduce evidence establishing that she suffers from such an impairment. *See Haiman,* 55 F.Supp.2d at 892–94. Accordingly, Haiman has failed to establish that the record reflects the requisite substantially-limiting impairment. Second, Haiman has failed to adduce evidence which establishes that a record even exists. In the three paragraphs in which Haiman addressed this claim, the only evidence she points to in support of this claim is Hoehne's memo to Meier and the attached log kept by Hoehne. (Pl.Br. in Opp'n to Def.Mot. for Summ.J. at 13–14.) The log is inadmissible and, therefore, cannot be proof of a record. *See infra* Sect. II.A.1. Further, although the memo does refer to Haiman's medical problem and leave, it does not refer to Haiman as disabled. In fact, the memo states that Haiman is able to perform the essential functions of her job, but

that she is doing it at another company. (Pl.Br. in Opp'n to Def.Mot. for Summ.J., Ex. H.) This is not enough to establish that a record exists. Thus, Haiman has failed to adduce evidence which creates a genuine issue of material fact with respect to this claim. Accordingly, the court finds that the Village is entitled to summary judgment on Haiman's ADA claim insofar as that claim is based upon Haiman's claim that she has a record of a disability as that term is defined in 42 U.S.C. § 12102(2)(B).

In sum, Haiman has failed to adduce evidence which shows that she was disabled under the terms of the ADA because she had a record of a disability. However, Haiman has adduced evidence which, when viewed in the light most favorable to her, would allow a reasonable jury to find that the Village regarded Haiman as having a disability.

## CONCLUSION

For the foregoing reasons, the court (1) grants the Village's motion *in limine* with respect to Hoehne's log and the testimony of medical experts; (2) denies the Village's motion *in limine* with respect to Hoehne's statements and testimony of Haiman's treating doctors; (3) grants the Village's motion for summary judgment on plaintiff Carolyn Haiman's ADA claim insofar as it is based on her claim that she has a record of a disability under 42 U.S.C. § 12102(2)(B); and (4) denies the Village's motion for summary judgment on plaintiff Carolyn Haiman's ADA claim insofar as it is based on her claim that the Village regarded her as having a disability under 42 U.S.C. § 12102(2)(C).